618 S.E.2d 387

Charlotte HINCHMAN, as Personal Representative of the Estate of Paul Z. Hinchman; Charlotte Hinchman, individually, Plaintiffs Below, Appellants,

v.

Julie M. GILLETTE, R.N., C.R.N.A., individually, and as the agent, servant and/or employee of Medical Doctor Associates, Inc., and as the agent, servant, and/or employee of Stonewall Jackson Memorial Hospital Company; Medical Doctor Associates, Inc., a foreign corporation doing business within the State of West Virginia; Roger K. Pons, M.D., individually and as the agent, servant and/or employee of Stonewall Jackson Memorial Hospital; Stonewall Jackson Memorial Hospital Company, a West Virginia corporation; John Doe and Jane Doe, Defendants Below, Appellees.

No. 31760.

Supreme Court of Appeals of West Virginia.

Submitted: April 5, 2005.

Filed: July 5, 2005.

Mary McQuain, Esq., The Calwell Practice, Thomas G. Wilson, Esq., Charleston, for Appellants.

Ancil G. Ramey, Esq., Steptoe & Johnson, Charleston, Susan S. Brewer, Esq., Kelly A. Stepp, Esq., Steptoe & Johnson, Morgantown, for Roger K. Pons.

David E. Schumacher, Esq., Schumacher, Francis & Nelson, Charleston, for Medical Doctor Associates, Inc.

Neva G. Lusk, Esq., Grant Shuman, Esq., Spilman, Thomas & Battle, Charleston, for Julie M. Gillette.

D.C. Offutt, Jr., Esq., Perry W. Oxley, Esq., L.R. Sammons, III, Esq., Offutt, Fisher & Nord, Huntington, for Stonewall Jackson Memorial Hospital Company.

Justice STARCHER delivered the Opinion of the Court.

Justice DAVIS concurs and reserves the right to file a concurring opinion.

Justice MAYNARD concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

STARCHER, J.

This case involves a circuit court's dismissal of a medical malpractice case because of alleged defects and insufficiencies in the plaintiff's pre-suit notice of claim and screening certificate of merit. Because the plaintiff did not receive specific pre-suit notice of the alleged defects and insufficiencies or an opportunity to correct them, we hold that the case should be reinstated.

## I.

### Facts & Background

In the instant case, the appellant and plaintiff below, Charlotte Hinchman, is the widow and personal representative of the estate of the late Paul Z. Hinchman.

The four appellees are Julie M. Gillette, R.N., C.R.N.A.; Medical Doctor Associates,

Inc.; Stonewall Jackson Memorial Hospital Company; and Roger K. Pons, M.D. All are healthcare providers who are alleged, in a complaint filed in the Circuit Court of Lewis County on January 7, 2003, to be legally liable to the appellant for wrongful death damages as a result of their alleged negligence in providing medical care and services to Mr. Hinchman during a pre-operative procedure. Specifically, Mr. Hinchman was being sedated in preparation for an outpatient biopsy surgery of his anal canal.

On July 7, 2003, the circuit court dismissed the appellant's case on the grounds that the appellant's pre-suit notice of claim and screening certificate of merit ("notice and certificate"), required by *W.Va.Code*, 55–7B–6 [2003],[1] were legally defective and insufficient.

*W.Va.Code*, 55–7B–6 [2003] states:

(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

(c) Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

(d) If a claimant or his or her counsel has insufficient time to obtain a screening certificate of merit prior to the expiration of the applicable statute of limitations, the claimant shall comply with the provisions of subsection (b) of this section except that the claimant or his or her counsel shall furnish the health care provider with a statement of intent to provide a screening certificate of merit within sixty days of the date the health care provider receives the notice of claim.

(e) Any health care provider who receives a notice of claim pursuant to the provisions of this section may respond, in writing, to the claimant or his or her counsel within thirty days of receipt of the claim or within thirty days of receipt of the screening certificate of merit if the claimant is proceeding pursuant to the provisions of subsection (d) of this section. The response may state that the health care provider has a bona fide defense and the name of the health care provider's counsel, if any.

---

1. *W.Va.Code,* 55–7B–6 [2001], which applied to the instant case, was slightly amended in 2003. It does not appear that the 2003 amendments raise any issues that are germane to this opinion; therefore, we will use the current (2003) version of the statute in this opinion.

(f) Upon receipt of the notice of claim or of the screening certificate of merit, if the claimant is proceeding pursuant to the provisions of subsection (d) of this section, the health care provider is entitled to pre-litigation mediation before a qualified mediator upon written demand to the claimant.

(g) If the health care provider demands mediation pursuant to the provisions of subsection (f) of this section, the mediation shall be concluded within forty-five days of the date of the written demand. The mediation shall otherwise be conducted pursuant to rule 25 of the trial court rules, unless portions of the rule are clearly not applicable to a mediation conducted prior to the filing of a complaint or unless the supreme court of appeals promulgates rules governing mediation prior to the filing of a complaint. If mediation is conducted, the claimant may depose the health care provider before mediation or take the testimony of the health care provider during the mediation.

(h) Except as otherwise provided in this subsection, any statute of limitations applicable to a cause of action against a health care provider upon whom notice was served for alleged medical professional liability shall be tolled from the date of mail of a notice of claim to thirty days following receipt of a response to the notice of claim, thirty days from the date a response to the notice of claim would be due, or thirty days from the receipt by the claimant of written notice from the mediator that the mediation has not resulted in a settlement of the alleged claim and that mediation is concluded, whichever last occurs. If a claimant has sent a notice of claim relating to any injury or death to more than one health care provider, any one of whom has demanded mediation, then the statute of limitations shall be tolled with respect to, and only with respect to, those health care providers to whom the claimant sent a notice of claim to thirty days from the receipt of the claimant of written notice from the mediator that the mediation has not resulted in a settlement of the alleged claim and that mediation is concluded.

(i) Notwithstanding any other provision of this code, a notice of claim, a health care provider's response to any notice claim, a screening certificate of merit and the results of any mediation conducted pursuant to the provisions of this section are confidential and are not admissible as evidence in any court proceeding unless the court, upon hearing, determines that failure to disclose the contents would cause a miscarriage of justice.

The appellant's notice and certificate read as follows:

\* \* \*

This letter is a Notice of Claim made under the provisions of § 55–7B–6 of the *West Virginia Code*. The claimant is my client, Charlotte Hinchman, Administratrix of the Estate of Paul Z. Hinchman.

Charlotte Hinchman intends to file a medical malpractice suit against you as a result of medical treatment you and others attempted to provide to her late husband, said Paul Z. Hinchman.

Specifically, Charlotte Hinchman claims that you breached applicable standards of care while attempting to provide medical treatment to Paul Z. Hinchman at Stonewall Jackson Memorial Hospital in Weston, West Virginia, on or about October 2, 2002 [2001], when he appeared there for a scheduled outpatient examination. Mrs. Hinchman claims that your breach of standards caused irreversible brain injury to Paul Z. Hinchman. Mr. Hinchman died of complications arising from said injuries on June 17, 2002.

A verified Certificate of Merit prepared by Roberto C. Valenzuela, J.D., a board certified anesthesiologist, is attached to this letter. Dr. Valenzuela's Certificate of Merit sets forth (1) that [*sic*] his familiarity with the applicable standard of care in issue; (2) his qualifications; (3) his opinion as to how the applicable standard of care was breached; and (4) his opinions as to how the breach of the applicable standard of care resulted in injury to Paul Z. Hinchman.

You are strongly cautioned to report receipt of Notice of Claim to your liability carrier and lawyer without delay. Section

55–7B–6 of the *West Virginia Code* requires that you file a written response to Charlotte Hinchman's claim within *thirty (30) days* of receipt.

Please govern yourself accordingly.

\* \* \*

The appellant's attached certificate of merit read:

\* \* \*

Thank you for asking me to review the medical records from Stonewall Jackson Memorial Hospital pertaining to the treatment of Paul Z. Hinchman dated October 2, 2001 through October 7, 2001.

I have been practicing anesthesiology in West Virginia since 1991, and have had the good fortune to participate in 5 years of academic practice as well as 6 years of private practice. I am a board certified anesthesiologist and have been appointed to the American Society of Anesthesiologists Committee on Surgical and Preoperative Anesthesia since October 2001. Therefore, I feel that I am familiar with the applicable standard of care in issue.

As a board certified anesthesiologist as well as with my participation in peer review, medical executive, and clinical competency committees I feel that I am qualified to render an opinion on the case of Mr. Hinchman. I have enclosed a copy of my *curriculum vitae* for your review.

After careful review of the records furnished me from Stonewall Jackson Memorial Hospital, Weston, WV, dated October 2, 2001 through October 7, 2001 pertaining to the treatment provided to Paul Z. Hinchman by Roger K. Pons, M.D., Julie M. Gillette, R.N., C.R.N.A., and various employees of Stonewall Jackson Memorial Hospital I conclude that the applicable standard of care was breached by the above entities in numerous ways.

First, Mr. Hinchman was excessively sedated for his physical condition, medical illnesses, and operative position. Second, the patient was inadequately monitored. Third, there was inadequate vigilance on the part of Nurse Gillette, Dr. Pons, and the other members of the OR Staff. Fourth, there was inadequate airway control. Fifth, there was a lack of recognition as to the underlying etiology of the patient's bradycardia resulting in delay of resuscitative efforts. And sixth, there was delayed airway securement once the patient was noted to be cyanotic.

The above deviations resulted in prolonged hypoxia, and subsequent respiratory and cardiac arrest.

\* \* \*

Copies of medical records relating to the claim and Mr. Hinchman's death were attached to the notice, as well as a copy of the certifying expert's resumé. A separate copy of this notice of claim and attached screening certificate of merit was personally addressed to and sent to each of the appellees on or about December 3, 2002.

Two of the appellees, Stonewall Jackson Memorial Hospital and Medical Doctor Associates, responded to the notice and certificate within thirty days of its receipt. One response read:

On behalf of Stonewall Jackson Memorial Hospital, this letter serves as the response to your Notice of Claim dated December 3, 2002 with the attached Screening Certificate from Dr. Valenzuela. Based on the scant details regarding standard of care deviations on the part of my client or its employees, all allegations contained in the Notice of Claim and Screening Certificate are hereby denied.

Also, please be advised that Stonewall Jackson Memorial Hospital declines to exercise its right to pre-litigation mediation authorized by West Virginia Code § 55–7B–6.

The other response read:

On behalf of Medical Doctor Associates, this letter serves as a response to your Notice of Claim dated December 3, 2002. Based on the inadequacy of the information concerning the alleged standard of care deviations on the part of Medical Doctor Associates or any of its agents or employees, all allegations contained in the Notice of Claim and screening certificate are hereby denied.

Please be advised that Medical Doctor Associates declines to exercise its right to pre-litigation mediation authorized by West Virginia § 55–7B–6.

The other appellees, Nurse Gillette and Dr. Pons, made no response to the notice and certificate.

After suit was filed on January 7, 2003, all of the appellees answered the complaint. On April 18, Nurse Gillette filed a motion to dismiss the complaint pursuant to *W.V.R.C.P.*, Rule 12(b)(6), alleging that the complaint should be dismissed because the appellant had failed to state a claim for relief by failing to properly comply with the pre-suit notice and certificate process set forth in *W.Va.Code*, 55–7B–6b [2003]. That motion was joined by Dr. Pons and Stonewall Jackson, and after a hearing on the motion, the circuit court granted those appellees' motions to dismiss.[2]

The circuit court's order stated:

1. The Plaintiffs provided one screening certificate of merit from Roberto C. Valenzuela, M.D., an anesthesiologist, for all of the defendant health care providers, rather than the required separate screening certificate of merit for each health care provider against whom a claim was asserted.

2. Dr. Valenzuela's discussion of his qualifications, and his curriculum vitae, which was attached to his screening certificate of merit, generally documented his qualifications to comment on the standard of care applicable to an anesthesiologist. However, Dr. Valenzuela did not expressly state with particularity his familiarity with any specific standard of care. Rather, he stated in a conclusory fashion, "I feel that I am familiar with the applicable standard of care in issue." Therefore, the certificate of merit is deficient in failing to state with particularity Dr. Valenzuela's familiarity with the standard of care applicable to Dr. Pons, a surgeon; Ms. Gillette, a Certified Registered Nurse Anesthetist; or any of the unnamed "various employees of Stonewall Jackson Memorial Hospital."

3. Dr. Valenzuela failed to state with particularity the standard of care applicable to each health care provider against whom a claim was asserted and how that standard of care was breached.

4. Finally, the screening certificate of merit did not sate with particularity how each alleged breach of the standard of care resulted in injury to or the death of the Plaintiffs' decedent.

## II.

### *Standard of Review*

■ The circuit court's ruling in its dismissal order applied the law to undisputed facts, and rested upon the interpretation of a statute. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a de novo standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

## III.

### *Discussion*

We begin our discussion with the caution that our decision in the instant case does not address the constitutionality of *W.Va.Code*, 55–7B–6 [2003]. We assume *arguendo* that the statute is constitutional. *Cf. Harshbarger v. Gainer*, 184 W.Va. 656, 660, 403 S.E.2d 399, 403 (1991).

Having said this, we examine the pre-suit notice and certificate statute, *W.Va.Code*, 55–7B–6 [2003]. This is a new statutory provision that this Court has not previously addressed. However, a similar statute for medical malpractice claims has been in effect in Florida for some time. The Florida courts have addressed a number of issues arising under their statute, and their analyses are instructive and persuasive.

In *Shands Teaching Hospital and Clinics, Inc. v. Barber*, 638 So.2d 570, 572 (Fla.App. 1994), the court stated:

The purpose of a notice of intent to sue is to give the defendant notice of the incident in order to allow investigation of the

---

**2.** Subsequently the circuit court dismissed the remaining appellee, Medical Doctor Associates, whose liability was "vicarious" to one of the already-dismissed appellees.

matter and promote presuit settlement of the claim; the expert corroborative opinion is designed to prevent the filing of baseless litigation. [Citations omitted.]

In *Patry v. Capps*, 633 So.2d 9, 11–12 [Fla.1994], Florida's Supreme Court stated:

The goal of [pre-suit notification] is to promote the settlement of meritorious claims early in the controversy in order to avoid full adversarial proceedings. [Citations omitted.]

The Florida Supreme Court has also held that the purpose of pre-suit requirements is to alleviate the high cost of medical negligence claims through early determination and prompt resolution of claims, not to deny access to the courts to plaintiffs. *Weinstock v. Groth*, 629 So.2d 835, 838 (Fla.1993).

And in *Wolfsen v. Applegate*, 619 So.2d 1050, 1055 (Fla.Ct.App.1993), the court said:

The procedure for judicial review [of pre-suit notice] cannot be converted into some type of summary proceeding to test the sufficiency, legally or factually, of medical negligence claims.

■ A reading of *W.Va.Code*, 55–7B–6 [2003] shows a purpose that is the same as that identified by the Florida courts for their statutory scheme. We hold therefore that under *W.Va.Code*, 55–7B–6 [2003] the purposes of requiring a pre-suit notice of claim and screening certificate of merit are (1) to prevent the making and filing of frivolous medical malpractice claims and lawsuits; and (2) to promote the pre-suit resolution of non-frivolous medical malpractice claims. The requirement of a pre-suit notice of claim and screening certificate of merit is not intended to restrict or deny citizens' access to the courts.

In the instant case, two of the appellees made no response to the appellant's notice and certificate of merit, only asserting the insufficiency of the notice and certificate after suit was filed. Two of the appellees made brief responses in which they asserted that there was a lack of detail or information about the standard of care in the notice and certificate. These appellees made no other criticism of the notice and certificate in their response.[3]

However, after suit was filed, three of the appellees, including two who had not responded to the notice or certificate, attacked the notice and certificate at length and on several distinct grounds.

Without determining whether any of the appellees' post-suit claims of alleged defects and insufficiencies in the appellant's notice and certificate were to any degree meritorious, we will assume *arguendo* that they had at least some degree of merit. So assuming, it is then necessary to ask whether it was appropriate and fair to dismiss the appellant's lawsuit—a draconian remedy—when the appellant had received no specific notice of the claimed alleged defects and insufficiencies, and no opportunity to correct them.

This Court stated in *Rosier v. Garron, Inc.*, 156 W.Va. 861, 875, 199 S.E.2d 50, 58 (1973) that "... to the extent possible, under modern concepts of jurisprudence, legal contests should be devoid of those sporting characteristics which gave law the quality of a game of forfeits or trial by ambush."

■ In the instant case, the appellees used a Rule 12(b)(6) motion to dismiss to challenge the sufficiency of the contents of the appellants' pre-suit notice and certificate. Ordinarily, in the case of a challenge to a complaint under Rule 12(b)(6), if the court determines that there is an insufficiency in a complaint, a party is afforded the opportunity to amend the complaint before dismissal of a case, which opportunity should be liberally given. Syllabus Point 6, *Cotton States Mut. Ins. Co. v. Bibbee*, 147 W.Va. 786, 131 S.E.2d 745 (1963); *Farmer v. L.D.I., Inc.*, 169 W.Va. 305, 286 S.E.2d 924 (1982).

However, in the situation in the instant case, there would seem to be no sense or utility in allowing amendment of a pre-suit notice and certificate *after* suit is filed. For specific objections to a pre-suit notice and certificate to be made for the first time only

---

**3.** Thus, with respect to the first purpose of the statute, all four of the appellees waived their right to engage in pre-suit mediation to attempt to resolve the claim against them. Why they did this, the record does not disclose.

after suit is filed is contrary to the purposes of the statute—to avert frivolous claims leading to a lawsuit and to promote the pre-suit resolution of non-frivolous claims.

■ We hold therefore that before a defendant in a lawsuit against a healthcare provider can challenge the legal sufficiency of a plaintiff's pre-suit notice of claim or screening certificate of merit under *W.Va.Code*, 55–7B–6 [2003], the plaintiff must have been given written and specific notice of, and an opportunity to address and correct, the alleged defects and insufficiencies.

The statutory scheme as set forth in *W.Va. Code*, 55–7B–6 [2003] and otherwise is silent as to when and how objections to the sufficiency of a notice of claim or certificate may be made. To address this evident gap or *lacuna* in the statute, *see Harmon v. Fayette County Bd. of Educ.*, 205 W.Va. 125, 136–137, 516 S.E.2d 748, 759–760 (1999),[4] we turn to an analogous provision, Rule 12(e) of the *West Virginia Rules of Civil Procedure*, which provides:

(e) Motion for More Definite Statement. If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within 10 days after notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just.

■■ In the pre-suit situation, of course, there is no court to rule on a motion for a more definite statement. Therefore, we modify Rule 12(e)'s approach, and hold that under *W.Va.Code*, 55–7B–6 [2003], when a healthcare provider receives a pre-suit notice of claim and screening certificate of merit that the healthcare provider believes to be legally defective or insufficient, the healthcare provider may reply within thirty days of the receipt of the notice and certificate with a written request to the claimant for a more definite statement of the notice of claim and screening certificate of merit. The request for a more definite statement must identify with particularity each alleged insufficiency or defect in the notice and certificate and all specific details and information requested by the defendant. A claimant must be given a reasonable period of time, not to exceed thirty days, to reply to a healthcare provider's request for a more definite statement, and all applicable periods of limitation shall be extended to include such periods of time.

■ Additionally, we hold that under *W.Va.Code*, 55–7B–6 [2003], the making of a request for a more definite statement in response to a notice of claim and screening certificate of merit preserves a party's objections to the legal sufficiency of the notice and certificate as to all matters specifically set forth in the request; all objections to the notice or certificate's legal sufficiency not specifically set forth in the request are waived.

■ We also hold that in determining whether a notice of claim and certificate are legally sufficient, a reviewing court should apply *W.Va.Code*, 55–7B–6 [2003] in light of the statutory purposes of preventing the making and filing of frivolous medical malpractice claims and lawsuits; and promoting the pre-suit resolution of non-frivolous medical malpractice claims. Therefore, a principal consideration before a court reviewing a claim of insufficiency in a notice or certificate should be whether a party challenging or defending the sufficiency of a notice and certificate has demonstrated a good faith and reasonable effort to further the statutory purposes.[5]

---

**4.** *See also Rogers v. City of South Charleston*, 163 W.Va. 285, 304–305, 256 S.E.2d 557, 568 (1979) (Neely, J. dissenting).

**5.** The Florida courts have concluded that legal wrangling about the technicalities of pre-suit notice is unwarranted if a court is satisfied that the statutory purposes of reasonably ensuring an adequate basis for the possible pre-suit resolution of non-frivolous medical malpractice claims have been achieved. *See Wolfsen, supra.*

This Court is attuned to and understanding of the legislative purpose of promoting the pre-suit resolution of medical malpractice claims that are not frivolous. Under the approach formulated in the instant case, the statutory purpose of avoiding frivolous litigation is served by authorizing a pre-suit request for a more definite statement, because a claimant is on notice before filing any suit of potential challenges to the sufficiency of a notice of claim and screening certificate of merit, and has an opportunity to provide a modified or supplemented notice or certificate that addresses any meritorious concerns raised by the healthcare provider. The purpose of encouraging pre-trial resolution is served by authorizing a pre-suit request for a more definite statement, and by affording an opportunity to the claimant to respond to the request, because if a claimant makes a more definite statement in response to a request, the healthcare provider has more information upon which to investigate and decide whether to mediate or otherwise respond to the claim.

 Applying the foregoing principles to the facts of the instant case: two of the appellees, Nurse Gillette and Dr. Pons, made no response to the notice and certificate. They did not request mediation and they raised no objection to the notice and certificate, thereby waiving any objection thereto post-suit. Two appellees, Stonewall Jackson Memorial Hospital and Medical Doctor Associates, responded to the appellant's notice and certificate with only a generic objection alleging lack of information or detail regarding the standard of care. These appellees also declined to engage in pre-suit mediation.

The appellant was not on notice, pre-suit, of the specific alleged defects and insufficiencies that the appellees asserted after suit was filed; nor did the appellant have an opportunity to address the allegations with further submissions. No appellee took advantage of the opportunity pre-suit to attempt mediation to further understand and possibly resolve the appellant's claims. Under these facts, dismissal of the appellant's suit, which was not clearly frivolous, was erroneous.[6]

6. Whatever technical insufficiencies the appellant's notice and certificate in the instant case may arguably have had, it strains common sense

## IV.

### Conclusion

The circuit court's dismissal order is reversed and this case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

DAVIS, J., concurring.

In this proceeding, the circuit court dismissed a complaint on the ground that the plaintiffs failed to fully comply with the medical malpractice certificate of merit requirement, as provided in W. Va.Code § 55–7B–6(b) (2003) (Supp.2004). The majority opinion has reversed the dismissal based on the finding that the defendants' objection to the certificate of merit was untimely. In rendering this decision, the majority opinion declined to address the constitutionality of the certificate of merit requirement. I concur in the result reached in this case. However, as I will demonstrate below, the majority opinion should have reversed this case on the grounds that the certificate of merit requirement violated the Separation of Powers/Rule-making Clauses and the Certain Remedy Clause of the West Virginia Constitution.

## A. W. VA. CODE § 55–7B–6(B) VIOLATES THE SEPARATION OF POWERS/RULE–MAKING CLAUSES

Before I demonstrate that the certificate of merit requirement of W. Va.Code § 55–7B–6(b) violates the Rule–Making Clause and Separation of Powers Clause, a brief review of both Clauses is necessary.

**(a) Separation of Powers Clause.** The Separation of Powers Clause of our state constitution provides in relevant part that "[t]he legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others[.]" W. Va. Const. art. 5, § 1. This Court stated in syllabus point 1 of *State ex rel. Barker v. Manchin*, 167 W.Va. 155, 279 S.E.2d 622

to assert that the notice and certificate support any contention that the appellant's claims were frivolous.

(1981), that the Separation of Powers Clause "is not merely a suggestion; it is part of the fundamental law of our State and, as such, it must be strictly construed and closely followed." It has been noted that "[t]he Separation of Powers Clause is given life by each branch of government working exclusively within its constitutional domain and not encroaching upon the legitimate powers of any other branch of government." *State ex rel. Affiliated Constr. Trades Found. v. Vieweg*, 205 W.Va. 687, 702, 520 S.E.2d 854, 869 (1999) (Davis, J., concurring). The Separation of Powers Clause literally "compels courts, when called upon, to thwart any unlawful actions of one branch of government which impair the constitutional responsibilities and functions of a coequal branch." ' *State ex rel. Farley v. Spaulding*, 203 W.Va. 275, 286–287, 507 S.E.2d 376, 387–388 (1998) (Davis, C.J., dissenting) (quoting *State ex rel. Brotherton v. Blankenship*, 158 W.Va. 390, 402, 214 S.E.2d 467, 477 (1975)). Furthermore, this Court has never "hesitated to utilize the doctrine where we felt there was a direct and fundamental encroachment by one branch of government into the traditional powers of another branch of government." *Appalachian Power Co. v. PSC*, 170 W.Va. 757, 759, 296 S.E.2d 887, 889 (1982). *See, e.g., State ex rel. West Virginia Citizens Action Group v. West Virginia Economic Dev. Grant Comm.*, 213 W.Va. 255, 580 S.E.2d 869 (2003) (finding statute that gave legislature a role in appointing members of the West Virginia Economic Grant Committee violated Separation of Powers Clause); *State ex rel. Meadows v. Hechler*, 195 W.Va. 11, 462 S.E.2d 586 (1995) (finding statute which permitted administrative regulations to die if legislature failed to take action violated Separation of Powers Clause); *State ex rel. State Bldg. Comm'n v. Bailey*, 151 W.Va. 79, 150 S,E.2d 449 (1966) (finding statute naming legislative officers to State Building Commission violated Separation of Powers Clause).

**(b) Rule–Making Clause.** The Rule–Making Clause of our constitution is quite clear in providing that the Supreme "[C]ourt shall have power to promulgate rules for all cases and proceedings, civil and criminal, for all of the courts of the State relating to writs, warrants, process practice and procedure, which shall have the force and effect of law." W. Va. Const. art. 8, § 3. As a result of the authority granted to this Court by the Rule–Making Clause, " 'a statute governing procedural matters in [civil or] criminal cases which conflicts with a rule promulgated by the Supreme Court would be a legislative invasion of the court's rule-making powers." ' *State v. Arbaugh*, 215 W.Va. 132, 138, 595 S.E.2d 289, 295 (2004) (Davis, J., dissenting) (quoting *People v. Hollis*, 670 P.2d 441, 442 (Colo.Ct.App.1983)). *See also* Syl. pt. 1, *Bennett v. Warner*, 179 W.Va. 742, 372 S.E.2d 920 (1988) ("Under article eight, section three of our Constitution, the Supreme Court of Appeals shall have the power to promulgate rules for all of the courts of the State related to process, practice, and procedure, which shall have the force and effect of law."); Syl, pt. 5, *State v. Wallace*, 205 W.Va. 155, 517 S.E.2d 20 (1999) ("The West Virginia Rules of Criminal Procedure are the paramount authority controlling criminal proceedings before the circuit courts of this jurisdiction; any statutory or common-law procedural rule that conflicts with these Rules is presumptively without force or effect."); Syl. pt. 7, in part, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994) ("The West Virginia Rules of Evidence remain the paramount authority in determining the admissibility of evidence in circuit courts.").

**(c) Interplay Between Separation of Powers Clause and the Rule Making Clause.** The recent decision by this Court in *Louk v. Cormier*, 218 W.Va. 81, 622 S.E.2d 788 (No. 31773, July 1, 2005), illustrates the interplay of the Separation of Powers Clause and the Rule Making Clause. *Louk* was a medical malpractice case in which a jury returned a non-unanimous verdict in favor of the defendant.[1] In the appeal by the plaintiff, it was argued that the medical malpractice statute, W. Va.Code § 55–7B–6d (2001), which authorized a non-unanimous verdict, was unconstitutional. Under the statute, it was mandatory that the trial judge instruct the jury that it could return a verdict based

---

**1.** Ten jurors voted in favor of the defendant.

upon the concurrence of at least nine jurors. The plaintiff contended that the statute was in conflict with Rule 48 of the West Virginia Rules of Civil Procedure. Under Rule 48, a non-unanimous jury verdict may only be returned if the parties stipulate to allowing such a verdict. The opinion in *Louk* addressed the conflict between the statute and Rule 48 as follows:

> The non-unanimous verdict provision in W. Va.Code § 55–7B–6d has stripped litigants of a right granted to them by this Court under our constitutional authority. The Legislature cannot remove that which was not in its power to give. This Court has made clear that "[t]he legislative, executive, and judicial powers ... are each in its own sphere of duty, independent of and exclusive of the other; so that, whenever a subject is committed to the discretion of the [judicial], legislative or executive department, the lawful exercise of that discretion cannot be controlled by the [others]." *Danielley v. City of Princeton,* 113 W.Va. 252, 255, 167 S.E. 620, 622 (1933). Promulgation of rules governing litigation in the courts of this State rests exclusively with this Court.

*Louk,* 218 W. Va. at 93, 622 S.E.2d at 800. The opinion in *Louk* went on to invalidate the statute on constitutional grounds as follows:

> Accordingly, we hold that the provisions contained in W. Va.Code § 55–7B–6d (2001) (Supp.2004) were enacted in violation of the Separation of Powers Clause, Article V, § 1 of the West Virginia Constitution, insofar as the statute addresses procedural litigation matters that are regulated exclusively by this Court pursuant to the Rule–Making Clause, Article VIII, § 3 of the West Virginia Constitution. Consequently, W. Va.Code § 55–7B–6d, in its entirety, is unconstitutional and unenforceable.

*Louk,* 218 W. Va. at 84, 622 S.E.2d at 791. *See also Games–Neely ex rel. West Virginia State Police v. Real Property,* 211 W.Va. 236, 565 S.E.2d 358 (2002) (invalidating a statute that was in conflict with Rule 60(b)); *West Virginia Div. of Highways v. Butler,* 205 W.Va. 146, 516 S.E.2d 769 (1999) (invalidat-

ing a statute that was in conflict with W. Va. R. Evid., Rule 702); *Mayhorn v. Logan Med. Found.,* 193 W.Va. 42, 454 S.E.2d 87 (1994) (invalidating a statute that was in conflict with W. Va. R. Evid., Rule 702); *Williams v. Cummings,* 191 W.Va. 370, 445 S.E.2d 757 (1994) (invalidating a statute that was in conflict with Trial Court Rule XVII); *Teter v. Old Colony Co.,* 190 W.Va. 711, 441 S.E.2d 728 (1994) (invalidating a statute that was in conflict with W. Va. R. Evid., Rule 702); *State v. Davis,* 178 W.Va. 87, 357 S.E.2d 769 (1987), *overruled on other grounds by State ex rel. R.L. v. Bedell,* 192 W.Va. 435, 452 S.E.2d 893 (1994) (invalidating a statute that was in conflict with W. Va. R.Crim. P., Rule 7); *Hechler v. Casey,* 175 W.Va. 434, 333 S.E.2d 799 (1985) (invalidating a statute that was in conflict with W. Va. R.App. P., Rule 23); *State ex rel. Quelch v. Daugherty,* 172 W.Va. 422, 306 S.E.2d 233 (1983) (holding that legislature could not enact law regulating admission to practice and discipline of lawyers); *Stern Bros., Inc. v. McClure,* 160 W.Va. 567, 236 S.E.2d 222 (1977) (invalidating statutes that conflicted with the Court's administrative rules setting out a procedure for the temporary assignment of a circuit judge in the event of a disqualification of a particular circuit judge); *Laxton v. National Grange Mut. Ins. Co.,* 150 W.Va. 598, 148 S.E.2d 725 (1966) (invalidating a statute that conflicted with W. Va. R. Civ. P. Rule 11), *overruled on other grounds by Smith v. Municipal Mut. Ins. Co.,* 169 W.Va. 296, 289 S.E.2d 669 (1982); *Montgomery v. Montgomery,* 147 W.Va. 449, 128 S.E.2d 480 (1962) (invalidating a statute that conflicted with W. Va. R. Civ. P., Rule 80).

## 2. The Certificate of Merit is Procedural Law

It has been observed that

> "[i]n order to ascertain whether there is an infringement on this Court's rulemaking authority, we must first determine whether the statute is substantive or procedural. If we find that the statute is 'substantive and that it operates in an area of legitimate legislative concern,' then we are precluded from finding it unconstitutional."

*State v. Arbaugh,* 215 W.Va. 132, 138, 595 S.E.2d 289, 295 (2004) (Davis, J., dissenting) (quoting *Caple v. Tuttle's Design–Build, Inc.,* 753 So.2d 49, 53 (Fla.2000)). Furthermore, it has been recognized that:

> Substantive law prescribes norms for societal conduct and punishments for violations thereof. It thus creates, defines, and regulates primary rights. In contrast, practice and procedure pertain to the essentially mechanical operations of the courts by which substantive law, rights, and remedies are effectuated.

*Arbaugh,* 215 W.Va. at 139, 595 S.E.2d at 296 (Davis, J., dissenting),(quoting *State v. Templeton,* 148 Wash.2d 193, 213, 59 P.3d 632, 642 (2002)).

Pursuant to the above authorities, the certificate of merit requirement may only be invalidated under the Separation of Power's Clause and the Rule–Making Clause if the requirement is procedural law and not substantive law. The issue of whether a medical malpractice certificate of merit requirement is procedural or substantive law was squarely addressed by the Ohio Supreme Court in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward,* 86 Ohio St.3d 451, 715 N.E.2d 1062 (1999).

In *Sheward,* a group of organizations and individuals filed an original action before the Ohio Supreme Court challenging the constitutionality of legislation that, among other things, required a certificate of merit be filed in medical malpractice cases ninety days after an answer is filed to the complaint. Before addressing the merits of the case, the *Sheward* opinion observed that in an earlier case, *Hiatt v. S. Health Facilities, Inc.,* 68 Ohio St.3d 236, 626 N.E.2d 71 (1994), the Court had struck down a statute which "provided that in an action upon a medical, dental, optometric, or chiropractic claim, the complaint must be accompanied by [a certificate] of merit." *Sheward,* 715 N.E.2d at 1087.[2] It was said in *Sheward* that, as a result of the decision in *Hiatt,* the legislature enacted the post-complaint certificate of merit requirement and denominated it as "sub-stantive" law. The *Sheward* Court was not persuaded by the legislature's designation of the new law as substantive. The opinion stated:

> In *Rockey v. 84 Lumber Co.* (1993), 66 Ohio St.3d 221, 611 N.E.2d 789, paragraph two of the syllabus, we held:
>
> "The Ohio Rules of Civil Procedure, which were promulgated by the Supreme Court pursuant to Section 5(B), Article IV of the Ohio Constitution, must control over subsequently enacted inconsistent statutes purporting to govern procedural matters."
>
> . . . .

> Respondent Montgomery argues that *Hiatt* is not determinative of [the new law's] validity because the General Assembly now "sets forth its view that the certificate of merit is substantive and it sets forth its rationale for that conclusion." In Section 5(H)(1), the General Assembly states that its intent in enacting [new law] is to respond to the holding in *Hiatt* "by clarifying the jurisdictional nature of · certificate of merit requirements and creating a substantive requirement for medical, dental, optometric, chiropractic, and malpractice claims."

> The notion that the General Assembly can direct our trial courts to apply a legislative rule that this court has already declared to be in conflict with the Civil Rules simply by denominating it "jurisdictional" or "substantive" is so fundamentally contrary to the principle of separation of powers that it deserves no further comment. . . .

> . . . .

> [The new statute] is no ordinary piece of legislation that happens to inadvertently cross the boundaries of legislative authority. The General Assembly has circumvented our mandates, while attempting to establish itself as the final arbiter of the validity of its own legislation. It has boldly seized the power of constitutional adjudication, appropriated the authority to establish rules of court and overrule judicial

---

**2.** The decision in *Hiatt* found that the certificate of merit statute was in conflict with Rule 11 of the Ohio Rules of Civil Procedure.

declarations of unconstitutionality, and, under the thinly veiled guise of declaring "public policy," establishing "jurisdiction," and enacting "substantive" law, forbade the courts the province of judicial review.

. . . .

We hold that [the new law] usurps judicial power in violation of the Ohio constitutional doctrine of separation of powers and, therefore, is unconstitutional.

*Sheward,* 715 N.E.2d at 1087, and 1096–97.

The principle of law to be gleaned from *Sheward* is that a pre-complaint or . post-complaint certificate of merit requirement involves procedural law, not substantive law. I agree with the reasoning of *Sheward* and therefore I do not hesitate in finding that the pre-complaint certificate of merit requirement imposed by our legislature is procedural law that implicates the Separation of Powers Clause and the Rule–Making Clause. *See State ex rel. Kenamond v. Warmuth,* 179 W.Va. 230, 232, 366 S.E.2d 738, 740 (1988) ("Procedural statutes . . . are effective only as rules of court and are subject to modification, suspension or annulment by rules of procedure promulgated by this Court.").

### 3. *W. Va.Code § 55–7b–6(b) Is in Conflict with West Virginia Civil Procedure Rule 11*

Before a plaintiff may initiate a medical malpractice action, W. Va.Code § 55–7B–6(b) requires the plaintiff serve the health care provider with a certificate of merit. *See* Franklin D. Cleckley, Robin J. Davis & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 3(a), at

**3.** The statute provides in full:

At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1)

1 (Supp.2005) ("A medical malpractice action is not considered filed until the requirements of W. Va.Code § 55–7B–6 have been satisfied."). The requirements of a certificate of merit are:

The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death.

W. Va.Code § 55–7B–6(b).[3] The essence or intent of this statute is that of serving as a "gatekeeper" to prevent frivolous medical malpractice claims from being filed. The statute does this by imposing inflexible prelawsuit investigatory duties and responsibilities on plaintiffs. I believe this statute is in direct conflict with Rule 11 of the West Virginia Rules of Civil Procedure. *See* Syl. pt. 3, *State ex rel. Weirton Med. Ctr. v. Mazzone,* 214 W.Va. 146, 587 S.E.2d 122 (2002) ("The provisions of the Medical Professional Liability Act . . . govern actions falling within its parameters, subject to this Court's power to promulgate rules for all cases and proceedings, including rules of practice and procedure, pursuant to Article VIII, Section 3 of the West Virginia Constitution.").

Rule 11 is the "gatekeeper" employed by this Court to keep out frivolous lawsuits. We have previously indicated that Rule 11

The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

W. Va.Code § 55–7B–6(b).

"reflects the dual concern with discouraging both frivolity and abuse ..., and places certain burdens upon the attorney with respect to his or her gatekeeping function." *Daily Gazette Co., Inc. v. Canady*, 175 W.Va. 249, 252, 332 S.E.2d 262, 265 (1985). Under Rule 11(a), all pleadings must be signed by an attorney or unrepresented party. It has been noted "that a signature certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." Cleckley, Davis & Palmer, *Litigation Handbook* § 11(a), at 241 (2002). Rule 11(b) further provides that,

> By presenting to the court ... a pleading ... an attorney ... is certifying that to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances,
>
> (1) it is not being presented for any improper purpose ...;
>
> (2) the claims ... therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery....

"Rule 11(b) imposes upon attorneys (and unrepresented parties) a duty to make a pre-filing reasonable inquiry into the facts and/or law that form the bases of any pleading ... tendered to the court." Cleckley, et al., *Litigation Handbook* § 11(b), at 242. If a plaintiff fails to make a pre-litigation inquiry into the facts of a case and files a frivolous action, Rule 11(c) provides for punishment. Under Rule 11(c), a "sanction may consist of ... an order to pay a penalty into court, or ... an order directing payment to the movant of some or all of the reasonable attorneys' fees

and other expenses incurred as a direct result of the violation" It has correctly been noted that "[t]he punishment component of Rule 11(c) protects the integrity of the judicial system by moderately or severely sanctioning an attorney. The deterrence component of Rule 11(c) protects the administration of justice by using sanctioned attorneys as examples of the poisonous fruits that spring from 'frivolous' litigation." Cleckley, et al. *Litigation Handbook*, § 11(c), at 248. *See, e.g., Pritt v. Suzuki Motor Co., Ltd.*, 204 W.Va. 388, 513 S.E.2d 161 (1998) (affirming sanctions against plaintiff for filing a baseless lawsuit); *Downing v. Ashley*, 193 W.Va. 77, 454 S.E.2d 371 (1994) (remanded for consideration of Rule 11 sanctions); *Daily Gazette Co., Inc. v. Canady*, 175 W.Va. 249, 332 S.E.2d 262 (1985) (recognizing inherent authority of court to impose sanctions for filing frivolous lawsuit).[4]

Although Rule 11 imposes a duty of pre-lawsuit investigation, we have recognized that a pre-lawsuit investigation may not reveal all relevant and dispositive facts:

> [T]here are instances where an attorney has exhausted all avenues of pre-suit investigation and needs the tools of discovery to complete factual development of the case. An action or claim is not frivolous if after a reasonable investigation, all the facts have not been first substantiated. A complaint may be filed if evidence is expected to be developed by discovery.

*Lawyer Disciplinary Bd. v. Neely*, 207 W.Va. 21, 26, 528 S.E.2d 468, 473 (1998). In the final analysis, Rule 11 expressly outlines the pre-lawsuit investigatory duties and responsibilities of attorneys. The certificate of merit requirement conflicts with the careful balance of pre-lawsuit investigatory duties and responsibilities imposed on attorneys by Rule 11. In this regard, we have held that "[l]egislative enactments which are not compatible with those prescribed by the judiciary or with its goals are unconstitutional violations of the separation of powers." *State ex rel. Quelch v. Daugherty*, 172 W.Va. 422, 424, 306

---

4. I will also note that the Rules of Professional Conduct prohibit attorneys from filing frivolous lawsuits. It expressly states in Rule 3.1 that "[a] lawyer shall not bring ... a proceeding, or assert ... an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law...."

S.E.2d 233, 235 (1983). *See Hinkle v. Black*, 164 W.Va. 112, 123, 262 S.E.2d 744, 750 (1979) ("[T]o the extent that statutes relating to pleading, practice and procedure are inconsistent with or repugnant to the Rules of Civil Procedure they [have] no ... force and effect[.]").

Consequently, I believe W. Va.Code § 55-7B-6(b) is unconstitutional because it was "enacted in violation of the Separation of Powers Clause, Article V, § 1 of the West Virginia Constitution, insofar as the statute addresses procedural litigation matters that are regulated exclusively by this Court pursuant to the Rule–Making Clause, Article VIII, § 3 of the West Virginia Constitution." Syl. pt. 3, in part, *Louk*. *See also Laxton v. National Grange Mut. Ins. Co.*, 150 W.Va. 598, 148 S.E.2d 725 (1966) (invalidating a statute that conflicted with Rule 11), *overruled on other grounds by Smith v. Municipal Mut. Ins. Co.*, 169 W.Va. 296, 289 S.E.2d 669 (1982).[5]

### B.W. VA. CODE § 55–7B–6(B) VIOLATES THE CERTAIN REMEDY CLAUSE

In addition to my belief that W. Va.Code § 55–7B–6(b) is invalid under the Separation of Powers/Rule–Making Clauses, I also believe the statute violates the Certain Remedy Clause of Article III, Section 17 of the West Virginia Constitution.[6] It is provided in Article III, Section 17 of the state constitution that "[t]he courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, *shall have remedy by due course of law* [.]" (Emphasis added.) The Certain Remedy Clause is a constitutional guarantee that all citizens have a right to seek redress for injuries in the courts of this state. *See* Syl. pt. 8, *Bennett v. Warner*, 179 W.Va. 742, 372 S.E.2d 920 (1988) ("It is beyond argument that the courts of this state are open to all and that parties in litigation should have access to their legal proceedings, W. Va. Const., art. III, § 17, and such access to court proceedings is also required as a part of due process, W. Va. Const., art. III, § 10."). However, noncompliance with the certificate of merit requirement under W. Va.Code § 55–7B–6(b) can prevent injured citizens from exercising the right guaranteed by the Certain Remedy Clause.

This Court has made clear that "[a] severe limitation on a procedural remedy permitting court adjudication of cases implicates the certain remedy provision of Article III, Section 17 of the West Virginia Constitution." *State ex rel. West Virginia State Police v. Taylor*, 201 W.Va. 554, 565, 499 S.E.2d 283, 294 (1997). *See also* Syl. pt. 6, in part, *Gibson v.*

---

5. I recognize that Rule 11(a) expressly grants the legislature authority to require a complaint be verified or accompanied by an affidavit. *See* Rule 11(a) ("Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit."). Assuming, for the sake of argument, that the certificate of merit was promulgated by the legislature pursuant to the authority granted by Rule 11(a), it is outside the scope of the type of affidavit contemplated by the rule, because it requires a plaintiff, in essence, to prove his/her case before a lawsuit is filed. An example of the type of certificate of merit affidavit that may pass muster under Rule 11(a), is a New York statutory rule of civil procedure that requires an affidavit accompany a complaint in medical malpractice actions:

> (a) In any action for medical, dental or podiatric malpractice, the complaint shall be accompanied by a certificate, executed by the attorney for the plaintiff, declaring that:
> (1) the attorney has reviewed the facts of the case and has consulted with at least one physician in medical malpractice actions, at least one dentist in dental malpractice actions or at

least one podiatrist in podiatric malpractice actions who is licensed to practice in this state or any other state and who the attorney reasonably believes is knowledgeable in the relevant issues involved in the particular action, and that the attorney has concluded on the basis of such review and consultation that there is a reasonable basis for the commencement of such action.

N.Y. Civ. P.L.R. § 3012–a (1991). *See also* Colo. Stat. Ann. § 13–20–602(3) (2002); Conn. Stat. Ann. § 52–190a(a) (Supp.2005); Fla. Stat. Ann. § 766.104(1) (2005). As illustrated by the New York statute, and as contemplated by Rule 11(a), a plaintiff is not required to submit an affidavit which, in essence, must prove his/her case before it is even litigated.

6. "This provision has sometimes been called the 'open courts' or 'access-to-courts' provision." *Randall v. Fairmont City Police Dep't*, 186 W.Va. 336, 342 n. 7, 412 S.E.2d 737, 743 n. 7 (1991) (citing *Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 693 n. 13, 408 S.E.2d 634, 644 n. 13 (1991)).

*West Virginia Dep't of Highways,* 185 W.Va. 214, 406 S.E.2d 440 (1991) ("[W]hen a legislative enactment either substantially impairs vested rights or severely limits existing procedural remedies permitting court adjudication of cases, then the certain remedy provision of Article III, Section 17 of the West Virginia Constitution is implicated."). We have developed a two-part test for determining whether the Certain Remedy Clause is violated:

> When legislation either substantially impairs vested rights or severely limits existing procedural remedies permitting court adjudication, thereby implicating the certain remedy provision of article III, section 17 of the Constitution of West Virginia, the legislation will be upheld under that provision if, first, a reasonably effective alternative remedy is provided by the legislation or, second, if no such alternative remedy is provided, the purpose of the alteration or repeal of the existing cause of action or remedy is to eliminate or curtail a clear social or economic problem, and the alteration or repeal of the existing cause of action or remedy is a reasonable method of achieving such purpose.

Syl. pt. 5, *Lewis v. Canaan Valley Resorts, Inc.,* 185 W.Va. 684, 408 S.E.2d 634 (1991). This Court has cautioned that "[i]n our 'certain remedy' [analysis] ... we consider the total impact of the legislation. Where its impact is limited rather than absolute, there is less interference with the 'certain remedy' principle, and the legislation will be upheld." *O'Dell v. Town of Gauley Bridge,* 188 W.Va. 596, 606, 425 S.E.2d 551, 561 (1992).

For the purposes of this concurring opinion, I will analyze only the second part of the test under *Lewis.*[7] There are two considerations under Lewis' second test: (1) whether the purpose of the alteration of the existing cause of action is to eliminate or curtail a clear social or economic problem, and (2) whether the alteration of the existing cause of action is a reasonable method of achieving

such purpose. I will examine these two issues separately.

**(a) Economic purpose of W. Va.Code § 55–7B–6(b).** The certificate of merit requirement was enacted in 2001 as part of several amendments to the Medical Professional Liability Act of 1986, W. Va.Code § 55–7B–1, *et seq.* (Supp.2004). Prior to enactment of the certificate of merit requirement, a victim of medical malpractice could file a complaint without first obtaining an affidavit from a health care provider as required by W. Va.Code § 55–7B–6(b). Consequently, enactment of the certificate of merit requirement altered the right of citizens to have access to state courts to seek redress for medical malpractice injuries. The Certain Remedy Clause permits the legislature to alter an existing cause of action for the purpose of eliminating or curtailing a clear social or economic problem. Thus, in order for the certificate of merit to preliminarily pass constitutional muster, it must be based upon an attempt by the legislature to eliminate or curtail a clear social or economic problem. The purpose of the Medical Professional Liability Act and the certificate of merit is set out in W. Va.Code § 55–7B–1, in relevant part, as follows:

> The Legislature hereby finds and declares that the citizens of this state are entitled to the best medical care and facilities available and that health care providers offer an essential and basic service which requires that the public policy of this state encourage and facilitate the provision of such service to our citizens;
>
> . . . .
>
> That in recent years, the cost of insurance coverage has risen dramatically while the nature and extent of coverage has diminished, leaving the health care providers, the health care facilities and the injured without the full benefit of professional liability insurance coverage;
>
> That many of the factors and reasons contributing to the increased cost and di-

7. Under the first test of *Lewis,* the Certain Remedy Clause is not violated if the legislature has provided a reasonably effective alternative remedy to an objectionable statute. It is clear that no alternative exists for the certificate of merit.

That is, if a plaintiff does not obtain a certificate of merit when it is required, he/she simply cannot maintain a medical malpractice cause of action. No alternative remedy is available.

minished availability of professional liability insurance arise from the historic inability of this state to effectively and fairly regulate the insurance industry so as to guarantee our citizens that rates are appropriate, that purchasers of insurance coverage are not treated arbitrarily and that rates reflect the competency and experience of the insured health care providers and health care facilities;

. . . .

That the cost of liability insurance coverage has continued to rise dramatically, resulting in the state's loss and threatened loss of physicians, which, together with other costs and taxation incurred by health care providers in this state, have created a competitive disadvantage in attracting and retaining qualified physicians and other health care providers.

. . . .

Therefore, the purpose of this article is to provide for a comprehensive resolution of the matters and factors which the Legislature finds must be addressed to accomplish the goals set forth in this section. In so doing, the Legislature has determined that reforms in the common law and statutory rights of our citizens must be enacted. . . .

There can be little doubt that the legislature enacted the certificate of merit requirement as part of a comprehensive effort to curtail the high cost of medical malpractice insurance. *Louk* stated "[t]his Court is quite sensitive to the need for reform in medical malpractice litigation. Furthermore, we wholeheartedly applaud the efforts of the Legislature in attempting to find a balance between the rights of injured persons and the desire to maintain a stable health care system in our State." *Louk,* 218 W. Va. at 92, 622 S.E.2d at 799. We also noted in *Robinson v. Charleston Area Med. Ctr., Inc.,* that "courts ordinarily will not reexamine independently the factual basis for the legislative justification for a statute. Instead, the inquiry is whether the legislature reasonably could conceive to be true the facts on which the challenged statute was based." *Robinson,* 186 W.Va. 720, 730, 414 S.E.2d 877, 887 (1991). Therefore, I find that the economic

problem the certificate of merit sought to address satisfies the Certain Remedy Clause.

**(b) Reasonableness of W. Va.Code § 55–7B–6(b).** Finding that the certificate of merit requirement satisfies the "economic problem" test of the Certain Remedy Clause does not end the inquiry. It must also be shown that the certificate of merit's alteration of the process of bringing a medical malpractice cause of action is a reasonable method of eliminating or curtailing the economic problem.

The certificate of merit requirement is designed to prevent frivolous medical malpractice lawsuits from being filed. To the extent that the certificate of merit requirement does not prevent meritorious medical malpractice lawsuits from being filed, it is a reasonable method for attempting to eliminate or curtail the rising costs of medical malpractice insurance. However, as I will show, the certificate of merit requirement does, in fact, *prevent* meritorious medical malpractice actions from being filed, and is, therefore, an unreasonable method for attempting to eliminate or curtail rising costs of medical malpractice insurance.

The certificate of merit requirement obligates plaintiffs to prove cases prematurely. "[M]edical malpractice cases require extensive pre-trial discovery[.]" David Zukher, *The Role of Arbitration in Resolving Medical Malpractice Disputes: Will A Well-Drafted Arbitration Agreement Help the Medicine Go Down?* 49 Syracuse L.Rev. 135, 139 (1998). The vast majority of legitimate medical malpractice cases require plaintiffs to engage in discovery to obtain all the facts necessary for an expert to render a legal opinion on the issue of whether or not a defendant breached the standard of care. Indeed it has been noted that " '[m]ost medical malpractice cases are either dropped by plaintiffs or settled out of court at some point during discovery.' " Catherine M. Sharkey, *Unintended Consequences of Medical Malpractice Damages Caps,* 80 N.Y.U. L.Rev. 391, 448 n. 260 (2005) (quoting Henry S. Farber & Michelle J. White, *Medical Malpractice: An Empirical Examination of the*

*Litigation Process,* 22 RAND J. Econ. 199, 201 (1991)).

Plaintiffs must be afforded sufficient time to develop cases, and the screening certificate of merit, filed pre-lawsuit, simply does not afford sufficient maturation of the issues. In the majority of cases, simply reading medical records will not be sufficient for an expert to render a bonafide opinion. One of the most critical pieces of evidence used by a medical malpractice expert in rendering an opinion is the deposition testimony of the defendant and all persons assisting in the rendering of services to the plaintiff. It is through the use of medical records and deposition testimony that a medical malpractice expert is able to reasonably determine whether a defendant breached the standard of care.[8] Consequently, by requiring an injured victim of medical malpractice to obtain a certificate of merit prior to filing a lawsuit and engaging in discovery, W. Va.Code § 55–7B–6(b) puts too onerous a burden on plaintiffs and weeds out not only frivolous claims, but effectively denies a remedy by due course of law to untold numbers of meritorious claims. In other words, W. Va.Code § 55–7B–6(b) "is an [example] of 'throwing out the baby with the bath water,' and creates a dangerous precedent with far-reaching consequences." *E.M. v. State,* 675 So.2d 90, 94 (Ala.Crim.App.1995) (Taylor, P.J., dissenting). *See State v. Briggs,* 756 A.2d 731, 739 (R.I.2000) ("While a baby's bath water may get dirty, that fact alone does not justify throwing out the baby with the dirty water.").

Insofar as I believe the certificate of merit requirement is not a reasonable method for preventing frivolous lawsuits and because it also shuts the door to meritorious claims, W. Va.Code § 55–7B–6(b) violates the Certain Remedy Clause.

**8.** I am not suggesting that medical records and deposition testimony are all that is needed to assist an expert in rendering an opinion. Other discoverable materials may also play a significant role. *See* B. Kent Buckingham, *When Laparoscopic Gallbladder Surgery Goes Wrong,* Trial, May 1999, at 20, 25 ("[M]any times the physician has videotaped the complete procedure. Attorneys should obtain the tape through a request for production.... The videotape can be immensely

## C. THE ISSUE OF SEVERABILITY

The legislature has created a severability statute that is applicable to W. Va.Code § 55–7B–6. Pursuant to the severability statute, W. Va.Code § 55–7B–11 (2004), the legislature has determined that if any provision in W. Va.Code § 55–7B–6 is invalidated, the remaining provisions are severable. However, "[u]nder this Court's severability principles of statutory construction we do not defer, as a matter of course, to severability provisions contained in statutes." *Louk,* 218 W. Va. at 96, 622 S.E.2d at 803. To the contrary, our cases have made clear that we will engage in an independent review to "determine legislative intent and the effect of the severability section of the statute." *In re Dostert,* 174 W.Va. 258, 272, 324 S.E.2d 402, 416 (1984), *overruled on other grounds by Harshbarger v. Gainer,* 184 W.Va. 656, 403 S.E.2d 399 (1991). We have adopted the following test that is applied in determining the issue of severability:

A statute may contain constitutional and unconstitutional provisions which may be perfectly distinct and separable so that some may stand and the others will fall; and if, when the unconstitutional portion of the statute is rejected, the remaining portion reflects the legislative will, is complete in itself, is capable of being executed independently of the rejected portion, and in all other respects is valid, such remaining portion will be upheld and sustained.

Syl. pt. 6, *State v. Heston,* 137 W.Va. 375, 71 S.E.2d 481 (1952). *Accord* Syl. pt. 3, *Frantz v. Palmer,* 211 W.Va. 188, 564 S.E.2d 398 (2001).

For the purposes of this concurring opinion, I will not examine all of the remaining provisions in W. Va.Code § 55–7B–6. Instead, I will examine only the severability of W. Va.Code § 55–7B–6(f).[9]

useful for experts to analyze and pinpoint the negligent act or omission.").

**9.** I have imposed this limitation because I believe that facially all other provisions of W. Va.Code § 55–7B–6 are so dependent upon W. Va.Code § 55–7B–6(b) and W. Va.Code § 55–7B–6(f) that they must be declared invalid. As the Court pointed out in *Louk,* "[t]he most critical aspect of severability analysis involves the degree of de-

The legislature has declared, through W. Va.Code § 55–7B–6(f), that "[u]pon receipt of the ... screening certificate of merit, ... the health care provider is entitled to pre-litigation mediation before a qualified mediator upon written demand to the claimant." Assuming, for the sake of argument, that the issue of pre-complaint mediation is severable from W. Va.Code § 55–7B–6(b), I believe the provision still is invalid because it conflicts with a rule promulgated by this Court. The decision in *Louk* will help illustrate my point.

As previously indicated, in *Louk*, this Court invalidated the non-unanimous verdict provision in W. Va.Code § 55–7B–6d. After doing so, the Court had to determine, among other things, whether the remaining twelve juror provision in the statute was severable. We found the remaining provision was not severable for two reasons:

The issue of the number of jurors in a civil action is addressed in Rule 47(b) of the West Virginia Rules of Civil Procedure. Rule 47(b) states, in relevant part, that "[u]nless the court directs that a jury shall consist of a greater number, a jury shall consist of six persons." Under W. Va.Code § 55–7B–6d, it is mandatory that a trial court seat twelve jurors in a medical malpractice action. However, under Rule 47(b), a jury is limited to six members unless, in the exercise of the trial court's discretion, a greater number is imposed. Clearly, the twelve juror requirement of W. Va.Code § 55–7B–6d is in conflict with Rule 47(b) and is therefore unconstitutional and invalid for that reason alone.

Additionally, the twelve juror requirement is dependent upon and intertwined with the unconstitutional non-unanimous jury verdict provision of W. Va.Code § 55–7B–6d. In order for the non-unanimous jury verdict provision to take effect, twelve jurors must be chosen so that a minimum of nine jurors may render a verdict. Consequently, the twelve juror provision is invalid because it is not severable from the unconstitutional non-unanimous jury verdict provision of W. Va.Code § 55–7B–6d. *Louk*, 218 W. Va. at 97, 622 S.E.2d at 804. *Louk* teaches that a provision in a statute may be invalidated (1) because it is intertwined and inseparable from a provision that was held unconstitutional, or (2) because the provision is in conflict with a rule promulgated by this Court.

The issue of mediation addressed in W. Va.Code § 55–7B–6(f) has been addressed by this Court in Rule 25.03 of the West Virginia Trial Court Rules. Rule 25.03 states that:

Pursuant to these rules and W. Va. R.Civ.P. 16, a court may, on its own motion, upon motion of any party, or by stipulation of the parties, refer a case to mediation. Upon entry of an order referring a case to mediation, the parties shall have fifteen (15) days within which to file a written objection, specifying the grounds. The court shall promptly consider any such objection, and may modify its original order for good cause shown. A case ordered for mediation shall remain on the court docket and the trial calendar.

Rule 25.03 reflects this Court's commitment to encouraging litigants to resolve disputes through mediation after a period of post-complaint discovery. To the extent that mediation is a viable option, it is only viable after the parties have learned the strengths and weaknesses of each side's position during post-complaint discovery.[10] Indeed, commentators have noted that it is the "conventional wisdom among defense attorneys, often accepted as true by plaintiffs' counsel, that the mediation should not be held until essentially all discovery ... was completed."

pendency of statutes." *Louk*, 218 W. Va. at 97, 622 S.E.2d at 804. That is, "[w]here the valid and the invalid provisions of a statute are so connected and interdependent in subject matter, meaning, or purpose as to preclude the belief, presumption or conclusion that the Legislature would have passed the one without the other, the whole statute will be declared invalid." Syl. pt. 9, *Robertson v. Hatcher*, 148 W.Va. 239, 135 S.E.2d 675 (1964). Additionally, I will not discuss the issue of whether the remaining "stat-

utes" in the Medical Professional Liability Act are severable from W. Va.Code § 55–7B–6(b). Such an analysis is far beyond the scope of this concurring opinion.

**10.** Ironically, the legislature has also purported to require mandatory post-complaint mediation in medical malpractice cases. It states in W. Va.Code § 55–7B–6b(b) (Supp.2004) that "[t]he court shall ... order the parties to participate in mandatory mediation."

Thomas B. Metzloff, Ralph A. Peeples and Catherine T. Harris, *Empirical Perspectives on Mediation and Malpractice*, 60 Law & Contemp. Probs. 107, 131 (1997).

The imposition of pre-complaint mediation by W. Va.Code § 55–7B–6(f) is clearly in conflict with Rule 25.03. *See* Syl. pt. 1, *Stern Bros., Inc. v. McClure*, 160 W.Va. 567, 236 S.E.2d 222 (1977) ("[A]dministrative rules promulgated by the Supreme Court of Appeals of West Virginia have the force and effect of statutory law and operate to supersede any law that is in conflict with them."). Pre-complaint mediation, without the fruits of diligent post-complaint discovery, "is a procedural hurdle which has the potential to prolong the time and increase the cost of medical malpractice litigation." *Carson v. Maurer*, 120 N.H. 925, 424 A.2d 825, 835 (1980).

In light of the reasons set out above, I believe that, as a result of the invalidity of W. Va.Code § 55–7B–6(b), all of the provisions in W. Va.Code § 55–7B–6 are invalid.

For the foregoing reasons, I concur.

MAYNARD, Justice, concurring, in part, and dissenting, in part.

The majority opinion may result in the complete gutting of a portion of the 2001 medical malpractice reforms.

I agree with the new law crafted in the majority opinion, which mandates that challenges to the sufficiency of a pre-filing certificate of merit must give the plaintiff an opportunity to address and correct alleged defects in the certificate prior to the filing of the complaint, to the extent that this law is applied only to alleged defects in the four corners of the certificate of merit. Specifically, a defendant should be required to challenge an alleged defect in the *content* of a certificate prior to the filing of the complaint. If, however, a plaintiff fails to provide a certificate of merit in the manner clearly set forth in the statute, the circuit court should dismiss the case immediately. This is because the statute is absolutely clear as to what exactly is required of a medical malpractice plaintiff.

For this reason, I must dissent to reversing and remanding this case to give the appellants another bite at the apple. The

fact is that the appellants' certificate was so deficient under the statute, that an immediate dismissal was warranted. According to W.Va.Code § 55–7B–6, "[a] *separate* screening certificate of merit must be provided for *each* health care provider against whom a claim is asserted." (Emphasis added). In the instant case, the *same* certificate was sent to each defendant. If the Legislature intended to mandate only that each health care provider be provided the same certificate, it would have omitted the word *separate* which in this context obviously means *individual or particular*. Under our rules of construction, this Court is to give each word of a statute meaning. When we give meaning to each word of W.Va.Code § 55–7B–6, it is clear that each health care provider is to be provided with a certificate of merit particular to that health care provider. This was not done here. Because the certificate was so fundamentally flawed, dismissal was proper and should be affirmed.

The majority's reversal and remand indicates to me that the statute requiring pre-certificates of merit may be rendered essentially meaningless. Plaintiffs may now fail to provide a certificate or provide a cursory one to see whether they can get by with it. If the defendant does object, the plaintiff can then proceed to do what he or she should have done at the outset—simply comply with the clear requirements of the statute.

I believe also that the certificate at issue was flawed in that it does not state with sufficient detail the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. Instead, it merely concludes that "[t]he above deviations resulted in prolonged hypoxia, and subsequent respiratory and cardiac arrest." The statute explains, in part, that a certificate of merit

shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted.

The appellant's certificate does not explain in any way how the respiratory and cardiac arrest that occurred in the surgical room ultimately caused the decedent's death.

Finally, I wish to make clear my firm conviction that W.Va.Code § 55–7B–6 is constitutional. The statute does not infringe upon the rule-making power of this Court because it does not conflict with any of this Court's rules. Our Rules of Civil Procedure "govern the procedure in all trial courts of record in all actions, suits, or other judicial proceedings of a civil nature." W.Va.R.Civ. Pro. 1. According to Rule of Civil Procedure 3(a), "[a] civil action is commenced by filing a complaint with the court." Thus, this Court's Rules of Civil Procedure do not govern a pre-filing certificate of merit because such a certificate is filed prior to the commencing of a civil action. Hence, W.Va.Code § 55–7B–6 is a legitimate addition to the substantive law of this State.

In sum, I would affirm the dismissal of the appellant's action below for failure to provide each of the appellees with a *separate* certificate of merit, and so I dissent to the majority's ultimate disposition of this case. However, I concur with the new law crafted by the majority to the extent that it applies only to alleged defects within the four corners of a certificate of merit. Accordingly, I concur, in part, and dissent, in part.