# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2019 Term

_____

No. 18-1071

_____

FILED

**November 12, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## STATE OF WEST VIRGINIA EX REL.
## PRIMECARE MEDICAL OF WEST VIRGINIA, INC.,
Petitioner

v.

## THE HONORABLE LAURA V. FAIRCLOTH,
## JUDGE OF THE CIRCUIT COURT OF BERKELEY COUNTY;
## THE ESTATE OF CODY LAWRENCE GROVE;
## JOSHUA DAVID ZOMBRO; and
## THE WEST VIRGINIA REGIONAL JAIL
## AND CORRECTIONAL FACILITY AUTHORITY,
Respondents

_____

### ORIGINAL PROCEEDING IN PROHIBITION

### WRIT GRANTED

_____

Submitted: September 4, 2019
Filed: November 12, 2019

Mark R. Simonton, Esq.              Paul G. Taylor, Esq.
D.C. Offutt, Jr., Esq.              Law Office of Paul G. Taylor
Anne Liles O'Hare, Esq.            Martinsburg, West Virginia
Offutt Nord Ashworth, PLLC         Counsel for the Respondent Estate of
Huntington, West Virginia          Cody Lawrence Grove
Counsel for the Petitioner

**Michael W. Taylor, Esq.**
**James W. Marshall III, Esq.**
**Bailey & Wyant, PLLC**
**Charleston, West Virginia**
**Counsel for the Respondent Joshua**
**David Zombro**

**Anthony J. Delligatti, Esq.**
**Matthew R. Whitler, Esq.**
**Pullin, Fowler, Flanagan, Brown & Poe,**
**PLLC**
**Martinsburg, West Virginia**
**Counsel for the Respondent West**
**Virginia Regional Jail and Correctional**
**Facility Authority**

**JUSTICE ARMSTEAD delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.      "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court.  It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers.  *W. Va. Code*, 53-1-1."  Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

2.      The pre-suit notice requirements contained in the West Virginia Medical Professional Liability Act are jurisdictional, and failure to provide such notice deprives a circuit court of subject matter jurisdiction.

3.      "Where . . . alleged tortious acts or omissions are committed by a health care provider within the context of the rendering of 'health care' as defined by W. Va.Code § 55–7B–2(e) (2006) (Supp.2007), the Act applies regardless of how the claims have been pled."  Syl. Pt. 4, in part, *Blankenship v. Ethicon, Inc.*, 221 W. Va. 700, 656 S.E.2d 451 (2007).

4.      Pursuant to W. Va. Code § 55-7B-6(a) and (b) [2003], no person may file a medical professional liability action against any health care provider unless, at least thirty days prior to the filing of the action, he or she has served, by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in the litigation.

5.      A circuit court has no authority to suspend the West Virginia Medical Professional Liability Act's pre-suit notice requirements and allow a claimant to serve

notice after the claimant has filed suit. To do so would amount to a judicial repeal of W.

Va. Code § 55-7B-6 [2003].

**Armstead, Justice:**

The West Virginia Medical Professional Liability Act (the "**MPLA**") says that no person may file a medical professional liability action against a health care provider unless he or she first serves a notice of claim on every health care provider that he or she will join in the action. W. Va. Code § 55-7B-6 [2003]. The Respondent Estate of Cody Lawrence Grove (the "**Estate**") sued the Respondent Joshua David Zombro ("**Officer Zombro**") and the Respondent West Virginia Regional Jail and Correctional Facility Authority (the "**Regional Jail Authority**") in the Circuit Court of Berkeley County. Later, the Estate amended its complaint to join the Petitioner, PrimeCare Medical of West Virginia, Inc., ("**PrimeCare**") as a defendant. PrimeCare is a health care provider, and the amended complaint charges PrimeCare with medical professional liability. Yet the Estate did not serve a notice of claim before it filed the amended complaint.

When PrimeCare moved to dismiss the amended complaint, the circuit court, instructed the Estate to serve notice under the MPLA. After a purported notice was served, the circuit court denied the motion to dismiss.

Based on the record before us, the arguments of the parties, and the applicable law, we find that the circuit court erred by failing to dismiss the Estate's claims against PrimeCare for lack of subject matter jurisdiction. Accordingly, we grant the writ of prohibition and vacate the circuit court's order denying PrimeCare's motion to dismiss. We further remand this case to the circuit court and direct it to enter an order dismissing the Estate's claims against PrimeCare.

1

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Cody Grove committed suicide on December 8, 2015, at the Eastern Regional Jail and Corrections Facility ("**Eastern Regional Jail**") where he was an inmate. At the time, Officer Zombro was a correctional officer at Eastern Regional Jail, and the Regional Jail Authority was responsible for the jail's operation and management.[1] According to the Estate, Mr. Grove was able to commit suicide because Officer Zombro failed to conduct one or more "safety checks" on Mr. Grove.

On December 7, 2017—one day short of two years after Mr. Grove's suicide—the Estate sued Officer Zombro and the Regional Jail Authority in the circuit court of Berkeley County.  The Estate sought damages for (1) deprivation of state constitutional rights, (2) negligent supervision, (3) negligent training and retention, (4) negligent and intentional infliction of emotional distress, (5) general negligence, and (6) wrongful death.  The Estate also asked the court to enjoin the Regional Jail Authority from similar acts and omissions.

On March 14, 2018, the Estate moved to amend the complaint to add PrimeCare as a defendant.  The circuit court granted the motion to amend on April 25, 2018, and the Estate filed an amended complaint on May 10, 2018.

---

[1] W. Va. Code § 31-20-5(v) & (w) [1998].  The Legislature repealed Section 5 in 2018 and transferred the Regional Jail Authority's former powers "in relation to all functions of correctional operations" to the Division of Corrections and Rehabilitation on July 1, 2018. 2018 W. Va. Acts c.107; W. Va. Code §§ 15A-3-2(c) and 15A-8-1(a)(1) [2018].

The amended complaint asserts the same six causes of action and requests the same injunctive relief. It is sometimes difficult to discern which allegations apply to PrimeCare, because the amended complaint rarely accuses PrimeCare by name. Indeed, most allegations simply charge "Defendants" with doing one thing or failing to do another. The amended complaint, for instance, alleges that "because of Cody Grove's prior incarcerations at the [Eastern Regional Jail], *Defendants* knew or should have known Cody Grove was addicted to heroin and a possible suicide risk" (emphasis added).

The amended complaint specifically alleges that PrimeCare "provided medical screening and monitoring of Eastern Regional Jail inmates on behalf of, and in concert with," the Regional Jail Authority. Elsewhere the amended complaint alleges that PrimeCare (and the Regional Jail Authority)

(a) negligently failed to supervise . . . [Officer] Zombro;

(b) negligently failed to properly train . . . [Officer] Zombro;

(c) negligently retained employment of . . . [Officer] Zombro;

(d) negligently fired . . . [Officer] Zombro;

(e) negligently staffed [Eastern Regional Jail];

(f) negligently failed to intervene on [Mr. Grove]'s behalf; . . .

(g) acted with deliberate indifference towards [Mr. Grove]; [and]

(h) allowed [Mr. Grove] to hang and kill himself . . . while in Defendants' "protective custody."

3

Later the amended complaint lists (and quotes from) a number of legislative rules that correctional facilities must follow in screening for, monitoring, and housing potentially suicidal inmates.[2] The Estate asserts that "Defendants ignored" these rules and "their own policies, practices, and procedures" by assigning Mr. Grove to "the general population, instead of [placing him] on full Suicide Watch where he belonged." However, the amended complaint also alleges that Mr. Grove "was on 'suicide watch', [sic] 'medical watch,' and/or under a heightened level of monitoring and/or supervision" when he died.[3]

PrimeCare filed a motion to dismiss on June 15, 2018, alleging that the Estate failed to serve the notice of claim and the screening certificate of merit required by the MPLA. W. Va. Code § 55-7B-6(b) [2003].[4] The MPLA applies to the Estate's claims,

---

[2] The Estate invokes W. Va. Code R. § 95-1-12.14 [1996] (monitoring), -14.1 (access to medical and psychiatric care), -14.9.5 (suicide prevention), -14.9.7 (intake screening), -14.9.11 (psychiatric illness), and -14.9.12 (housing assignment for inmates diagnosed with psychiatric illness).

[3] The record is not entirely clear about Mr. Grove's circumstances at the time of his death. The circuit court's order says that Grove took his life "while he was under a suicide watch." Medical records, however, indicate that Grove was in a medical cell for observation due to symptoms of withdrawal.

[4] The Legislature amended Section 6 in 2017 and 2019. However, W. Va. Code § 55-7B-10(c) [2017] provides that the 2017 amendments only "apply to . . . causes of action . . . which arise or accrue on or after July 1, 2017." Accordingly, we refer to the version of Section 6 that was in effect from March 8, 2003, to June 28, 2017.

according to PrimeCare, because the Estate accuses PrimeCare of medical negligence. PrimeCare also asserted that the Estate's claims are barred by the statute of limitations.[5]

In response, the Estate claimed that a screening certificate of merit is not required where the plaintiff's theory of liability is well-established and there is no need for expert testimony to establish the standard of care.[6] Grove's death, according to the Estate, raised "a nonmedical, administrative, ministerial, or routine care issue" that "was not complex." The Estate also maintained that the amended complaint's filing was timely because it related back to the complaint's filing on December 7, 2017.[7]

The Estate did not dispute that it did not serve PrimeCare with a notice of claim. Rather, the Estate asked the circuit court to either (a) stay proceedings until it could comply with the MPLA's notice requirements or (b) direct PrimeCare to give notice of its objections under *Hinchman v. Gillette*, 217 W. Va. 378, 618 S.E.2d 387 (2005).[8] The

---

[5] As a third ground for relief, PrimeCare alleged that the Estate failed to plead a cause of action for deprivation of state constitutional rights.

[6] *See* W. Va. Code § 55-7B-6(c) ("Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.").

[7] *See* W. Va. R. Civ. P. 15(c).

[8] *See* Syl. Pt. 3, *Hinchman*, 217 W. Va. 378, 618 S.E.2d 387 ("Before a defendant in a lawsuit against a healthcare provider can challenge the legal sufficiency of a plaintiff's pre-suit notice of claim or screening certificate of merit under *W.Va.Code,* 55–7B–6 [2003],

5

circuit court considered PrimeCare's motion at a hearing on July 9, 2018. During the hearing, the circuit court directed the Estate to comply with the MPLA.

On July 17, 2018, the Estate e-filed[9] a "Notice of Medical Malpractice Claim/Certificate of Merit" (the "**Notice of Claim**"). The Notice of Claim simply referred to the amended complaint (which was attached) for the Estate's theory of liability. Instead of attaching a screening certificate of merit,[10] the Notice of Claim repeated the Estate's claim that its theory of liability was well-established and did not depend on expert testimony to establish the standard of care. PrimeCare objected to the Notice of Claim in a July 31, 2018 letter to the Estate.

On November 19, 2018, the court entered an order denying PrimeCare's motion to dismiss.[11] The court found that PrimeCare suffered no harm from the Estate's

---

the plaintiff must have been given written and specific notice of, and an opportunity to address and correct, the alleged defects and insufficiencies.").

[9] We note that this method of service was defective. *See* W. Va. Code § 55-7B-6(b) ("At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve *by certified mail, return receipt requested*, a notice of claim on each health care provider the claimant will join in litigation." (emphasis added)).

[10] A screening certificate of merit is a sworn statement from a health care provider confirming, in his or her expert opinion, that the relevant standard of care was breached and that this breach caused injury or death. *See* W. Va. Code § 55-7B-6(b).

[11] The parties learned how the circuit court was going to rule (and why) at a hearing on August 27, 2018.

6

late MPLA notice, and the court agreed with the Estate's argument that no screening certificate of merit was necessary.[12]

PrimeCare filed this petition for writ of prohibition on December 7, 2018. PrimeCare challenges the circuit court's November 19, 2018 order denying PrimeCare's motion to dismiss.[13]

## II. STANDARD OF REVIEW

We have held that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W. Va. Code*, 53-1-1." Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

PrimeCare contends that the MPLA's pre-suit notice requirements are jurisdictional and, therefore, that failure to provide such notice deprives a circuit court of subject matter jurisdiction.[14] We agree. We have held that "'[g]enerally the want of notice

---

[12] The circuit court's order acknowledged PrimeCare's assertion that the Estate violated the statute of limitations, but the court made no findings of fact or conclusions of law of any kind with respect to this argument.

[13] Officer Zombro and the Regional Jail Authority separately filed responses stating that they have "no stance on the substantive matters set forth in the Petition."

[14] The Estate raises two objections to PrimeCare's jurisdictional argument, neither of which persuades us. *First*, the Estate claims that PrimeCare has invoked Rule 12(b)(1) (lack of jurisdiction) for the first time in this writ petition. According to the Estate, PrimeCare invoked Rule 12(b)(6) (failure to state a cause of action) when it moved to dismiss below. PrimeCare denies this, but their disagreement makes no difference. PrimeCare is before us on the same substantive ground—failure to comply with the MPLA—as it argued below.

7

required by statute is a jurisdictional defect which cannot be cured.' 4 Cooley on Taxation (4th Ed.), sec. 1590, p. 3135." *Gates v. Morris*, 123 W. Va. 6, 11, 13 S.E.2d 473, 476 (1941). In this case, the statute could not be clearer: "[*N*]*o person may file* a medical professional liability action against any health care provider *without complying with the provisions of this section* [i.e., W. Va. Code § 55-7B-6]" (emphasis added). We affirmed the jurisdictional nature of MPLA pre-suit notice in *Keith v. Lawrence*, No. 15-0223, 2015 WL 7628691 (W. Va. Nov. 20, 2015) (memorandum decision). In *Keith*, we found that an interlocutory appeal from an order denying a motion to dismiss for deficient MPLA pre-suit notice was proper because the circuit court had resolved a jurisdictional question. *Id*. at *2. Accordingly, we hold that the pre-suit notice requirements contained in the MPLA

---

Therefore, the Estate cannot claim surprise, and we note that Rule 12 commands a circuit court to dismiss an action "[w]henever it appears by suggestion of the parties *or otherwise* that the court lacks jurisdiction of the subject matter[.]" W. Va. R. Civ. P. 12(h)(3) (emphasis added). Therefore, the circuit court's obligation to consider whether it had subject matter jurisdiction did not turn on whether PrimeCare invoked the right subdivision of Rule 12(b). *Second*, the Estate notes that the Regional Jail Authority has filed a third-party complaint against PrimeCare. According to the Estate, if the Court has jurisdiction over PrimeCare as a *third-party defendant*, the Court necessarily has jurisdiction over PrimeCare as a *defendant*. This argument ignores the vital difference between personal jurisdiction and subject matter jurisdiction and the fact that a court can have subject matter jurisdiction over some claims and not others. Thus, the circuit court may, indeed, have personal jurisdiction over PrimeCare, and it may, indeed, have subject matter jurisdiction over the Regional Jail Authority's third-party claims against PrimeCare. (We do not decide either question.) But granting these things has nothing to do with the question that is actually before us—whether the circuit court had subject matter jurisdiction over the Estate's claims against PrimeCare.

8

are jurisdictional and that failure to provide such notice deprives a circuit court of subject matter jurisdiction.

When a petition raises a jurisdictional challenge, "we must determine . . . whether it is jurisdictional in the sense of requiring a decision upon facts or a decision upon a pure question of law." *Lewis v. Fisher*, 114 W. Va. 151, 154-155, 171 S.E. 106, 107 (1933). "If it rests upon a determination of fact, prohibition will not lie."[15] *Id*. at 155, 171 S.E. at 107. If, however, the challenge "rests upon the determination of a question of law, prohibition will lie if the trial court has exceeded its jurisdiction or usurped a jurisdiction that in law does not exist." *Id*. Because the question is one of law, we apply a *de novo* standard of review. *See, e.g.*, *Tennant v. Smallwood*, 211 W. Va. 703, 707, 568 S.E.2d 10, 14 (2002).

With these standards in mind, we now consider whether—based on the undisputed facts before us—the MPLA applies to the Estate's claims against PrimeCare and, if so, whether the Estate complied with the MPLA before it filed the amended complaint.

## III. ANALYSIS

As we have noted, the MPLA commands that, "no person may file a *medical professional liability action* against any health care provider without" providing pre-suit notice. W. Va. Code § 55-7B-6(a) (emphasis added). PrimeCare asserts that all of the

---

[15] Prohibition will not lie, in that instance, because the circuit court has a "right . . . to determine the existence or non-existence of facts that give rise to its own jurisdiction[.]" *Id*. at 154, 171 S.E. at 107. "[T]he sole remedy is by appeal or writ of error." *Id*.

Estate's claims against PrimeCare sound in "medical negligence." The Estate denies this, contending that "at least several" of its claims "do not involve medical malpractice[.]" We begin, therefore, by determining whether the Estate's claims against PrimeCare amount to a "medical professional liability action."[16]

### A. Medical Professional Liability Action

The MPLA defines "medical professional liability" broadly. "Medical professional liability" is "*any liability for damages resulting from the death* or injury of a person for *any tort* or breach of contract *based on health care services rendered, or which should have been rendered*, by a health care provider or health care facility to a patient." W. Va. Code § 55-7B-2(i) [2015] (emphasis added).[17] It also includes "other claims that may be *contemporaneous to or related to* the alleged tort or breach of contract or otherwise provided, all *in the context of rendering health care services*." *Id*. (emphasis added).[18]

---

[16] No party denies that PrimeCare is a "health care provider" for purposes of the MPLA, and we have no reason to believe otherwise, given the allegations in the amended complaint.

[17] The Legislature amended Section 2 in 2016 and 2017. However, there are no relevant differences between the 2015 and 2016 versions of Section 2, and—as noted above—the 2017 amendments only "apply to . . . causes of action . . . which arise or accrue on or after July 1, 2017." W. Va. Code § 55-7B-10(c).

[18] In Syl. Pt. 3, in part, *Boggs v. Camden-Clark Mem'l Hosp. Corp.*, 216 W. Va. 656, 609 S.E.2d 917 (2004), *holding modified by Gray v. Mena*, 218 W. Va. 564, 625 S.E.2d 326 (2005), we held that the MPLA "does not apply to other claims that may be contemporaneous to or related to the alleged act of medical professional liability." This holding was based on a prior version of the statute and is no longer correct.

Section 2 contains similarly broad definitions of "health care," "health care

facility," and "health care provider. "Health care" is

> (1) *Any act, service or treatment* provided under, pursuant to
> or in the furtherance of a physician's plan of care, *a health care
> facility's plan of care, medical diagnosis or treatment*;
>
> (2) Any act, service or treatment *performed or furnished, or
> which should have been performed or furnished*, by *any health
> care provider or person supervised by or acting under the
> direction of a health care provider or licensed professional* for,
> to or on behalf of a patient during the patient's medical care,
> treatment or *confinement*, including, but not limited to,
> *staffing*, medical transport, *custodial care* or basic care,
> infection control, positioning, hydration, nutrition and similar
> patient services; and
>
> (3) The process employed by health care providers and health
> care facilities for the appointment, *employment*, contracting,
> credentialing, privileging and *supervision of health care
> providers*.

W. Va. Code § 55-7B-2(e) (emphasis added). A "health care facility" includes "any clinic

. . . or other ambulatory health care facility, in and licensed, regulated or certified by the

State of West Virginia under state or federal law and *any state-operated institution or clinic

providing health care* and any related entity to the health care facility." W. Va. Code § 55-

7B-2(f) (emphasis added). A "health care provider" is any

> person, . . . corporation, . . . health care facility, entity or
> institution licensed by, or certified in, this state or another state,
> to provide health care or professional health care services,
> including, but not limited to, a physician, osteopathic
> physician, physician assistant, advanced practice registered
> nurse, hospital, health care facility, . . . registered or licensed
> practical nurse, . . . any person supervised by or acting under
> the direction of a licensed professional, *any person taking
> actions or providing service or treatment pursuant to or in*

11

> *furtherance of a physician's plan of care, a health care*
> *facility's plan of care, medical diagnosis or treatment*; or an
> officer, employee or agent of a health care provider acting in
> the course and scope of the officer's, employee's or agent's
> employment.

W. Va. Code § 55-7B-2(g) (emphasis added).

Upon review of the amended complaint, we find that all of the Estate's claims against PrimeCare are subject to the MPLA. A fair reading of the amended complaint reveals that the Estate blames PrimeCare for (a) failing to properly assess Mr. Grove's potential for suicide, (b) failing to properly house and monitor Mr. Grove in light of his (allegedly) known potential for suicide, and (c) failing to properly train, monitor, and discipline Officer Zombro, whom the Estate blames, in particular, for failing to properly monitor Mr. Grove. Applying the definitions set forth in Section 2 of the MPLA, these allegations state a claim for "medical professional liability" because the acts or omissions in question were "*health care services* rendered, or which should have been rendered, by a *health care provider* or *health care facility* to a patient." W. Va. Code § 55-7B-2(i) (emphasis added).

This conclusion becomes particularly clear when we note that "health care" includes (a) "[a]ny act, service or treatment provided under, pursuant to or in furtherance of . . . a health care facility's plan of care, medical diagnosis or treatment"; (b) "[a]ny act, service or treatment . . . which should have been performed or furnished"; (c) acts performed or omitted "by any . . . person supervised by or acting under the direction of a health care provider"; (d) acts performed or omitted "during the patient's . . . confinement";

12

(e) decisions about "staffing, . . . custodial care . . . and similar patient services"; and (f) the "employment . . . and supervision of health care providers[.]" W. Va. Code § 55-7B-2(e). This conclusion is further strengthened when we consider that "health care provider" includes "any person taking actions or providing service or treatment pursuant to or in furtherance of a . . . health care facility's plan of care, medical diagnosis or treatment[.]" W. Va. Code § 55-7B-2(g).

The Estate may rightly observe that the amended complaint accuses "the Defendants" of violating various state constitutional protections. However, "failure to plead a claim as governed by the [MPLA] . . . does not preclude application of the Act." Syl. Pt. 4, in part, *Blankenship v. Ethicon, Inc.*, 221 W. Va. 700, 656 S.E.2d 451 (2007). "Where . . . alleged tortious acts or omissions are committed by a health care provider within the context of the rendering of 'health care' as defined by W. Va.Code § 55–7B–2(e) (2006) (Supp.2007), the Act applies *regardless of how the claims have been pled*." *Id.* (emphasis added). The amended complaint's constitutional claims cannot be considered in isolation, because they appear without any immediate factual support. Thus, in order to regard them as anything other than wholly conclusory, we must resort to allegations set forth elsewhere in the amended complaint. Those other allegations show that the Estate's claims against PrimeCare are claims for medical professional liability and, therefore, claims that are subject to the MPLA's pre-suit notice requirements.

13

## B. Pre-Suit Notice Requirements

Because we find that the Estate's claims against PrimeCare are covered by the MPLA, we must determine what pre-suit notice the Estate was required to give before it filed the amended complaint.

The MPLA prohibits any person from "fil[ing] a medical professional liability action against any health care provider without complying with the provisions of this section." W. Va. Code § 55-7B-6(a). Section 6 provides that "[a]t least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, *a notice of claim* on each health care provider the claimant will join in litigation." W. Va. Code § 55-7B-6(b) (emphasis added). This "notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent," and it is to be joined by "a screening certificate of merit." *Id.* The latter must "be executed under oath by a health care provider qualified as an expert" and it must (among other things) "state with particularity . . . the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death." *Id.*

As the Estate reminds us, there are circumstances when a notice of claim may be served without a screening certificate of merit. *See* W. Va. Code § 55-7B-6(c)[19] and (d).[20] The Estate maintains that no certificate of merit was necessary here because its theory of liability is well-established and does not depend on expert testimony to establish

---

[19] W. Va. Code § 55-7B-6(c):

> Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

We note that the word "believes" suggests that an entirely subjective standard determines when a claimant must serve a screening certificate of merit. That is not how we have understood this language in the past. Rather, whether a claimant must serve a certificate of merit is question that appears to turn on objective medical reality. *See Westmoreland v. Vaidya*, 222 W. Va. 205, 211 n.13, 664 S.E.2d 90, 96 n.13 (2008) (per curiam) ("We fully concur with the trial court's decision that this case requires expert testimony, and by implication, a certificate of merit, based on the complex urological issues involved in this case."). We invite the Legislature to consider whether "believes" properly reflects its intention in this matter.

[20] W. Va. Code § 55-7B-6(d):

> If a claimant or his or her counsel has insufficient time to obtain a screening certificate of merit prior to the expiration of the applicable statute of limitations, the claimant shall comply with the provisions of subsection (b) of this section except that the claimant or his or her counsel shall furnish the health care provider with a statement of intent to provide a screening certificate of merit within sixty days of the date the health care provider receives the notice of claim.

a breach of the standard of care. *See* W. Va. Code § 55-7B-6(c). While we disagree with the Estate's claim that no certificate of merit was required here,[21] regardless of such requirement, the Estate's failure to serve a notice of claim is dispositive in this case.[22]

The duty to serve a notice of claim exists in addition to the duty to serve a certificate of merit. Exceptions that apply to the certificate of merit have no bearing on a claimant's separate obligation to serve a notice of claim. Section 6 does not say—much less imply—that there is *any* circumstance where *any* claimant may file a medical professional liability action against a health care provider without first serving a notice of claim. Indeed, the plain language of Section 6 excludes that possibility.[23]

---

[21] *See McLaughlin v. Murphy*, No. 17-0453, 2018 WL 2175705 (W. Va. May 11, 2018) (memorandum decision) (circuit court correctly found that a certificate of merit was necessary "because petitioner's allegations involved complex medical issues" in a case where a drug-addicted psychiatric patient was released from care and was later hit by an automobile).

[22] We would also note that, according to Section 6(c), a person who believes that no certificate of merit is necessary "shall file a statement *specifically* setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit" (emphasis added). The Estate's July 17, 2018 Notice of Claim merely asserts that no certificate of merit is necessary under Section 6(c) "because the action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care." A conclusory statement like this is not sufficient to invoke the exception.

[23] The Estate would also remind us that the pleading in question is an *amended* complaint filed pursuant to Rule 15 of the West Virginia Rules of Civil Procedure and that Section 6 expressly provides that "[n]othing in this subsection [i.e., subsection (b)] may be construed to limit the application of rule 15 of the rules of civil procedure." W. Va. Code § 55-7B-6(b). Section 6, however, does not state that the pre-suit notice requirement does not apply whenever a claimant amends a pleading under Rule 15. Clearly, Section 6 and Rule 15 are fully compatible, and Section 6 required the Estate to serve pre-suit notice before it filed the amended complaint.

As we held in *Davis v. Mound View Health Care, Inc.*, 220 W. Va. 28, 32, 640 S.E.2d 91, 95 (2006), "[t]he provisions of W. Va.Code § 55–7B–6 (a) and (b) are clear and unambiguous, and thus should be applied as written." We hold, therefore, pursuant to W. Va. Code § 55-7B-6(a) and (b), that no person may file a medical professional liability action against any health care provider unless, at least thirty days prior to the filing of the action, he or she has served, by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in the litigation. On the undisputed facts of this case, we find that the Estate filed the amended complaint before it served PrimeCare with the Notice of Claim and that the Estate, therefore, filed the amended complaint in violation of the MPLA.

### C. Dismissal on Remand

Because the Estate failed to provide the pre-suit notice required by the MPLA, the question becomes what the circuit court should have done when it became aware of this fact.

We begin by observing that denying the motion to dismiss and instructing the Estate to provide *post-suit* notice was not an option. The MPLA's notice provisions exist "(1) to prevent the making and filing of frivolous medical malpractice claims and lawsuits; and (2) to promote the pre-suit resolution of non-frivolous medical malpractice claims." Syl. Pt. 2, in part, *Hinchman*, 217 W. Va. 378, 618 S.E.2d 387. These intents are thwarted whenever claimants file suit and give notice later. The circuit court was incorrect, therefore, when it found that the Estate's failure to give pre-suit notice did not "prejudice"

17

PrimeCare's rights. More importantly, a circuit court has no authority to suspend the MPLA's pre-suit notice requirements and allow a claimant to serve notice after the claimant has filed suit. To do so would amount to a judicial repeal of W. Va. Code § 55-7B-6. *See Motto v. CSX Transp., Inc.*, 220 W. Va. 412, 419, 647 S.E.2d 848, 855 (2007) (refusing "[t]o accept the circuit court's opinion that it ha[d] discretion to waive this mandatory [pre-suit] notice [to state agencies]" because it "would require us, in effect, to judicially repeal W. Va.Code § 55–17–3(a)").

Rule 12(h)(3) of the West Virginia Rules of Civil Procedure clearly states that a circuit court must dismiss an action "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter[.]" When PrimeCare made the court aware of the Estate's failure to provide pre-suit notice (and when the Estate conceded as much) the circuit court's duty was clear—to dismiss the amended complaint for lack of subject matter jurisdiction.[24]

## IV. CONCLUSION

For the foregoing reasons, we conclude that the circuit court erred by failing to dismiss the Estate's claims against PrimeCare because, to the extent the MPLA's pre-

---

[24] When such a dismissal occurs, "the medical malpractice action may be re-filed pursuant to W. Va.Code § 55–2–18 (2001) after compliance with the pre-suit notice of claim and screening certificate of merit provisions of W. Va.Code § 55–7B–6 (2003)." Syl. Pt. 3, in part, *Davis* 220 W. Va. 28, 640 S.E.2d 91. We note, however, that our savings statute only authorizes "a party [to] refile the action if the initial pleading was timely filed[.]" W. Va. Code § 55-2-18(a) [2001]. This ability to re-file, when such re-filing is otherwise timely, is consistent with this Court's finding that "[t]he requirement of a pre-suit notice of claim and screening certificate of merit is not intended to restrict or deny citizens' access to the courts." Syl. Pt. 2, in part, *Hinchman*, 217 W. Va. 378, 618 S.E.2d 387.

suit notice requirements were not complied with, the circuit court lacked subject matter jurisdiction to proceed. Accordingly, we grant the writ of prohibition and vacate the circuit court's order denying PrimeCare's motion to dismiss. We further remand this case to the circuit court and direct the circuit court to enter an order dismissing the Estate's claims against PrimeCare.

Writ granted.