**FILED**

**April 15, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 21-0038 – *Tanner v. Raybuck*

Chief Justice Hutchison, concurring:

In this medical malpractice action, Plaintiffs Rita and Dennis Tanner allege in their complaint that Defendant Bryan D. Raybuck, M.D., attempted, but failed, to implant a device known as the WATCHMAN Left Atrial Appendage Closure Device ("WATCHMAN LAAC") into Mrs. Tanner, causing her significant injury. More specifically, the complaint alleges that Dr. Raybuck twice attempted to deploy a WATCHMAN LAAC device and on the second attempt, the device came free from the delivery cable and embolized inside Mrs. Tanner's left ventricle. The complaint further alleges that "[t]he device was never retrieved from M[r]s. Tanner's left ventricle by Dr. Raybuck, and an emergency cardiac surgical intervention was necessary to retrieve the device from her heart."

The majority opinion correctly concluded that, based upon the plaintiffs' admitted failure to provide Dr. Raybuck with a screening certificate of merit *before* filing their complaint, as required by the West Virginia Medical Professional Liability Act, West Virginia Code 55-7B-6(b), the circuit court was deprived of subject matter jurisdiction and so dismissal of the complaint was mandatory. In so concluding, the majority opinion determined that the circuit court, having no jurisdiction over the subject matter, should not have undertaken the analysis of whether the plaintiffs' standard of care expert, Dr. Emil Hayek (an interventional cardiologist practicing in the same field as Dr. Raybuck), was qualified to provide the screening certificate of merit that was provided after the filing of

1

the complaint. Consistent with that admonishment, the majority similarly elected to forego such an analysis.

Although I concur with the majority's ultimate holding (that dismissal of the complaint, without prejudice, was proper because of the failure to provide Dr. Raybuck with a screening certificate of merit prior to the filing of the complaint), I write separately because I expect that the question of Dr. Hayek's qualifications will recur following remand. If this occurs, it is critical that the circuit court understand that the cursory analysis and conclusions offered by the defendant were contrary to the clear and unambiguous language of the MPLA. As discussed below, Dr. Hayek is more than qualified to render an expert opinion as to the standard of care in this case and the circuit court erred in concluding that the screening certificate of merit was deficient as a matter of law.

The pre-requisites for filing an action against a health care provider, including the criteria for a screening certificate of merit, are set forth in W. Va. Code § 55-7B-6(b):

> (b) At least 30 days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. . . . The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, . . . together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider who:
>
> (1) Is qualified as an expert under the West Virginia rules of evidence;

2

(2) Meets the requirements of § 55-7B-7(a)(5) and § 55-7B-7(a)(6) of this code; and

(3) Devoted, at the time of medical injury, 60 percent of his or her professional time annually to the active clinical practice in his or her medical field or specialty, or to teaching in his or her medical field or specialty in an accredited university.

If the health care provider executing the screening certificate of merit meets the qualifications of subdivisions (1), (2), and (3) of this subsection, there shall be a presumption that the health care provider is qualified as an expert for the purpose of executing a screening certificate of merit. The screening certificate of merit shall state with particularity, and include: (A) The basis for the expert's familiarity with the applicable standard of care at issue; (B) the expert's qualifications; (C) the expert's opinion as to how the applicable standard of care was breached; (D) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death; and (E) a list of all medical records and other information reviewed by the expert executing the screening certificate of merit.

Pursuant to the relevant parts of West Virginia Code § 55-7B-7(a)(5) and (6),

"[a] proposed [standard of care] expert witness may only be found competent to testify if

the foundation for his or her testimony is first laid establishing that[,]"

(5) the expert witness maintains a current license to practice medicine with the appropriate licensing authority of any state of the United Sates: *Provided*, That the expert witness's license has not been revoked or suspended in the past year in any state; and

(6) *the expert witness is engaged or qualified in a medical field in which the practitioner has experience and/or training in diagnosing or treating injuries or conditions similar to those of the patient.*

(Emphasis added). *See* W. Va. Code § 55-7B-6(b)(2).

3

Dr. Hayek received his medical education and training at the Johns Hopkins University School of Medicine; practices in the same field as Dr. Raybuck (interventional cardiology); and is board certified in internal medicine, cardiovascular disease, nuclear cardiology, and echocardiography. Dr. Hayek founded and is currently the president (since 2007) and medical director (since 2009) of Western Reserve Heart Care in Hudson, Ohio. He is also Assistant Professor of Medicine (since 2009) at University Hospitals/Case Western Reserve University. He devotes at least 75% of his time to the active clinical practice of medicine and "actively teach[es] the standard of care for cardiologists to members of the medical community." In the screening certificate of merit, Dr. Hayek stated that he is familiar with the standard of care applicable to this case and opined that "Dr. Raybuck negligently deviated from the applicable standard of care for an interventional cardiologist/electrophysiologist, [sic] increased the risk of harm which was a substantial factor in bringing about the ultimate injury to plaintiff Rita Tanner." Based upon the records provided to him, Dr. Hayek opined that Mrs. Tanner "was injured and damaged from Dr. Raybuck's deviation from the standard of care" as follows:

 a. Failing to secure the required concurrent opinion and attestation from a second interventional cardiologist or electrophysiologist that the left atrial appendage closure (LAAC) with WATCHMAN surgical procedure was medically necessary.

 b. Failing to obtain proper informed consent from Rita Tanner for the left atrial appendage closure (LAAC) with WATCHMAN surgical procedure after a concurrent opinion for the procedure was obtained.

 c. Failing to order a pre-op diagnostic 3D cardiac CT scan to determine the appropriate size of the left atrial appendage closure (LAAC) with WATCHMAN for Rita Tanner.

4

d. Failing to properly size the left atrial appendage closure (LAAC) with WATCHMAN for Rita Tanner prior to the surgical procedure.

e. Surgical implantation of an inappropriate sized left atrial appendage closure (LAAC) with WATCHMAN.

f. Failure to abandon the surgical procedure when it was reasonably clear that the 24 mm left atrial appendage closure (LAAC) with WATCHMAN device was too large for the patient.

g. Repeatedly attempting to position an ill-fitting appendage device, causing it to break free and loose in the patient's body.

Despite Dr. Hayek's extensive (and impressive) education, professional training, and experience in the field of interventional cardiology – all of which was included in his curriculum vitae provided with the screening certificate of merit and made a part of the record below – the circuit court concluded that he does not possess the "experience and/or training in diagnosing or treating injuries or conditions similar to those of the patient[,]" W. Va. Code § 55-7B-7(a)(6), and that, as a result, the plaintiffs failed to provide a screening certificate of merit that meets the threshold requirements of West Virginia Code § 55-7B-6(b). The stated basis for the court's conclusion is that Dr. Hayek has not performed/is not trained to perform the WATCHMAN LAAC procedure – a requirement that is not supported by the MPLA.

Under the clear and unambiguous language of the MPLA, there is absolutely no requirement that a proffered expert have performed or be trained to do the identical procedure, or use the same medical device, disputed by the parties. The MPLA, in addition to other statutory requirements that are not at issue in this case, requires similarity, not identicality. A proposed expert need only be "engaged or qualified in a medical field in

5

which the practitioner has experience and/or training in diagnosing or treating injuries or conditions *similar* to those of the patient." W. Va. Code § 55-7B-7(a)(6) (emphasis added). Dr. Hayek more than satisfies this requirement as he has extensive experience in the field of interventional cardiology and "in diagnosing or treating . . . conditions similar to those of [Mrs. Tanner.]" *Id.* The circuit court was clearly wrong in adopting the defendant's narrow reading of this provision so as to disqualify Dr. Hayek from executing a certificate of merit in this case. This Court has stated that "[i]n determining whether a notice of claim and certificate [of merit] are legally sufficient, a reviewing court should apply W. Va. Code, 55-7B-6 [2003] in light of the statutory purposes of preventing the making and filing of frivolous malpractice claims and lawsuits; and promoting the pre-suit resolution of non-frivolous medical malpractice claims." Syl. Pt. 6, in part, *Hinchman v. Gillette*, 217 W. Va. 378, 618 S.E.2d 387 (2005). Given the serious allegations of the complaint, it is beyond cavil that the plaintiffs' malpractice claim against Dr. Raybuck is in no way frivolous and that the certificate of merit executed by Dr. Hayek, in light of his extensive and relevant professional experience, is legally sufficient.[1]

---

[1] In a similar context involving whether a medical expert is qualified to testify at trial, this Court has instructed that where the proposed expert may be unfamiliar with a specific procedure that is the subject of the action, but otherwise satisfies the MPLA's statutory requirements, the expert is qualified to render an opinion, leaving it to the trier of fact to weigh the expert's credibility. *See Walker v. Sharma*, 221 W. Va. 559, 566-67, 655 S.E.2d 775, 782-83 (2007) (stating that, in a medical negligence case involving a urethral stricture dilation procedure, the fact the plaintiff's expert, a board-certified urologist, "uses a different method to perform [the procedure at issue] does not disqualify him from giving testimony on the standard of care to be employed when performing this type of procedure. [Rather] . . . the jury would have been free to attach whatever weight they decided to [the expert's] testimony given that he did not employ the [specific] instrument set in performing

Finally, not to be overlooked is the fact that that the screening certificate of merit included Dr. Hayek's expert opinion that Dr. Raybuck deviated from the standard of care with respect to arguably routine actions that he should have performed *prior* to performing the WATCHMAN LAAC procedure (such as failing to obtain a second opinion that the procedure was medically necessary; failing to obtain the proper informed consent; and failing to perform certain pre-surgical diagnostic testing). Without question, regardless of whether the circuit court deemed Dr. Hayek qualified to opine about the surgical procedure itself, Dr. Hayek was more than adequately qualified to render an expert opinion about Dr. Raybuck's *pre*-surgical acts and omissions. Thus, it was clear error for the circuit court to follow the defendant's invitation to ignore these opinions and declare that the screening certificate of merit was deficient as a matter of law.

---

the procedure"). *See also Mayhorn v. Logan Med. Found.*, 193 W. Va. 42, 50, 454 S.E.2d 87, 95 (1994) (concluding that board certified internal medicine physician who was professor of cardiology and previously worked in emergency room was qualified to give expert testimony in wrongful death action involving treatment of patient by emergency room physician, and observing that if the defendant health care provider "had wanted to challenge the veracity of [the expert's] credentials it could have done so through cross-examination"); *Fortney v. Al-Hajj*, 188 W. Va. 588, 591, 595, 425 S.E.2d 264, 267, 271 (1992) (finding that general surgeon who had previously handled impacted food blockage cases was qualified to give expert standard of care opinion as to defendant emergency room doctor's handling of the patient's impacted food blockage even though the expert only worked in an emergency room to perform surgeries when requested by emergency room physicians, and noting that "[a]ny shortcomings which [the defendant] believed existed in [the expert's] credentials could have properly been the subject of cross-examination"); *accord Gentry v. Mangum*, 195 W. Va. 512, 527, 466 S.E.2d 171, 186 (1995) (recognizing that "[d]isputes as to the strength of an expert's credentials, mere differences in methodology, or lack of textual authority for the opinion go to weight and not to the admissibility of their testimony").

For the foregoing reasons, I concur with the majority opinion.